281 So.2d 824 (1973)
Whitley A. TABOR
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY.
No. 9436.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied August 23, 1973.
Writ Refused October 19, 1973.
*825 Robert J. Vandaworker, Baton Rouge, for appellant.
James F. Pierson, Jr. and Curtis K. Stafford, Jr., Baton Rouge, for appellee.
Before SARTAIN, BLANCHE and WATSON, JJ.
BLANCHE, Judge.
Plaintiff, Whitley A. Tabor, brought this suit against the liability insurer of Pamela K. Dixon (now Mrs. Pamela K. Dixon Baron) to recover damages for personal injuries sustained by him as a result of being struck by an automobile driven by Miss Dixon. The accident occurred on November 5, 1971, at approximately 11:45 P.M. on the north service road of Florida Boulevard in the Parish of East Baton Rouge near the site of a fair sponsored by a Baton Rouge businessmen's association and known as the "Baton Rouge Jaycee Fair."
The trial judge rendered judgment in plaintiff's favor in the sum of $4,739, finding that the accident was caused by the negligence of the driver of the automobile and holding that plaintiff was not guilty of contributory negligence so as to bar his recovery. From this judgment, defendant has appealed. Plaintiff has answered the appeal, seeking an increase in the award in his favor. We affirm.
In its four specifications of error on appeal the defendant contends the trial judge erred (1) in finding the driver of the automobile negligent, (2) in finding the plaintiff free of negligence, (3) in applying the doctrine of last clear chance, and (4) in awarding an excessive amount to plaintiff.
We now proceed to review the evidence. The plaintiff attended the Baton Rouge Jaycee Fair with Laura Sibley on the night of November 5, 1971, and they left the fair around 11:20 P.M. The witnesses for both the plaintiff and defendant testified that attendance at the fair that night was large, and quite a few pedestrians were still leaving the fair at this time and returning to their cars, which were parked in the fair parking lot, in the neutral ground of Florida Boulevard and on the shoulders of the service road where the accident took place. The service road is a two-lane, black-top road approximately twenty feet in width and is north of and parallel to Florida Boulevard. Florida Boulevard is a heavily *826 traveled thoroughfare which is a major east-west traffic artery having two lanes for eastbound traffic and two lanes for westbound traffic that are separated by a neutral ground. Policemen were directing traffic out of the fair parking lot and having the same turn east on the service road. Traffic proceeding east on the service road would also be facing the lights from traffic proceeding west on Florida Boulevard. All witnesses described the lighting in the area as sufficient to see that stretch of the service road from the point of the accident to the Pak-A-Sak Store located to the east as well as to the exit from the parking lot where Miss Dixon exited.
The plaintiff testified that in order to return to his automobile, which was parked in the neutral ground between the eastbound and westbound lanes of Florida Boulevard, he and Miss Sibley walked across the fair parking lot at an angle. When he and Miss Sibley reached the service road, he looked in both an easterly and westerly direction but saw only one car traveling west on the service road. This car appeared to him to be in the vicinity of the Park-A-Sak Store. Plaintiff positively testified that he saw no cars approaching from the east, or the direction from which Miss Dixon was proceeding. Miss Sibley was on his left-hand side and they crossed the service road with their back and side toward eastbound traffic. Mr. Tabor testified they were walking in a leisurely fashion and had safely crossed the westbound lane of the road and were in the eastbound lane when he heard Miss Sibley call out and saw the lights of the Dixon vehicle about two feet away. He was hit only a second after he saw the lights.
Miss Sibley testified that they came out of the rear exit of the fair and walked across the parking area toward their car. As they reached the service road, there were no eastbound or westbound cars approaching in the immediate area, and they proceeded to walk diagonally across the road, she being on the plaintiff's left. Miss Sibley did not hear the warning sound of an automobile horn prior to the accident, testifying that the sound of the tires on the pavement caused her to look around. By then the car was only three or four feet away and it was too late to get out of its path. With regard to the area, she stated that "there were quite a few people * * * scattered out" walking to their cars, and "[t]here were cars * * * parked all up and down the service road on both sides of Florida Boulevard." However, no cars were parked on either side of the service road near the place where the accident happened. She further stated that they were not hurrying to get to their car or to cross the service road and corroborated plaintiff's testimony that they were walking leisurely.
Miss Dixon's version of what occurred cannot possibly be reconciled with the testimony of plaintiff and that of Miss Sibley. Miss Dixon was one of the volunteer workers at the fair and worked late because of the large crowd. Around 11:30 P.M. she and her date, Albert W. Magee, Jr., proceeded to her automobile. He wiped the dew off the windshield with a paper bag and a handkerchief and Miss Dixon then proceeded to leave the parking lot, with Mr. Magee following her in his own car. Mr. Magee corroborated wiping off the windshield, and the photographs offered in evidence display smudge marks apparently caused by the wiping. Miss Dixon was directed to turn east on the service road. After proceeding down the service road approximately 500 feet at a speed of approximately twenty miles per hour, she testified that "two kids" ran out in front of her and she hit them. As noted heretofore, both plaintiff and his date denied they were running, having described their action as walking leisurely and diagonally across the service road.
Bridger Eglin testified that he was an eye witness to the accident, and there is no question as to his lack of interest in the outcome of the case. The trial judge found him to be a completely independent *827 and unbiased witness. He had been doing volunteer work at the fair and was a passenger in an automobile driven by John Hamilton. Both Mr. Eglin and Mr. Hamilton were officers in local banks and were returning to the fair site after making a deposit of fair receipts at a bank located some distance east of the fair. They were proceeding in a westerly direction on the service road and meeting Miss Dixon. Mr. Hamilton did not observe the accident, though he testified to hearing an exclamation of Mr. Eglin just prior to the accident to the effect, "She doesn't see them [referring to Miss Dixon]." Mr. Eglin was seated in the right front seat and could see the automobiles as well as the pedestrians all the way to the intersection where traffic was exiting from the fair. He saw Miss Dixon exit from the fair and proceed toward the plaintiff and Miss Sibley, both of whom were walking in the road. He observed that Miss Dixon was not aware of the presence of the plaintiff and Miss Sibley in the roadway and that they likewise did not notice her automobile approaching. Mr. Eglin further testified that he tried to observe Miss Dixon through the windshield of her car to determine if she were aware of the pedestrians in the road in front of her and stated that she did not observe them until just before the impact. He would not agree with prior testimony that they were running and stated that he observed them walking. That Mr. Eglin was close enough to see is substantiated by the fact that the accident occurred just as they were parallel to the Dixon vehicle. Mr. Hamilton substantiated this when he testified he heard a thump and looked to the left and saw the Dixon vehicle strike the plaintiff.
The trial judge remarked that the most crucial factual determination to be made was whether plaintiff and Miss Sibley ran across the service road in front of the Dixon vehicle or whether they had been walking leisurely, as described by the plaintiff, his date and Mr. Eglin. We also believe it is important, because if Mr. Eglin saw plaintiff from as far away as the Pak-A-Sak Store, then Miss Dixon also should have seen him as she exited onto the service road since the point of collision was estimated to be approximately halfway between the two points. We adopt the trial judge's resolution of this issue as follows:
"* * * The court must resolve this issue adverse to the defendant. The evidence, and in particular the testimony of Mr. Eglin, convinced the court that plaintiff had been in the road for several seconds prior to the time that he was struck. Mr. Eglin was a completely disinterested witness and even though the court feels that he was mistaken in testifying that plaintiff had been walking down the road towards him in an easterly direction for several seconds prior to the accident, the court does not feel that he was in error in his most positive statement that plaintiff was not running in the road. The testimony from plaintiff and Miss Sibley indicated they had been walking diagonally across the pavement. It is of no importance to the court whether their line of travel was diagonal or straight and does not in the court's opinion affect liability. The crucial observation as made by Mr. Eglin was that they were not running.
"This determination is strengthened by Mr. Hamilton's testimony. He saw nothing prior to impact. His vehicle and the Dixon vehicle were approaching from opposite directions, approaching the same spot at about the same speed. Had the plaintiff been running across the street he would have run directly across the path of Hamilton's oncoming vehicle, yet Hamilton never saw him. This conclusion prompts another query: would plaintiff have darted across the road at this particular time when there was traffic approaching so near, both from the east and the west? The only reasonable conclusion which the court can draw in this case is that plaintiff's version of the *828 facts is that entitled to the greatest weight. * * *" (Written Reasons for Judgment, Record, pp. 22, 23)
We therefore conclude, as did the trial judge, that Miss Dixon was not keeping a proper lookout and simply ran over the plaintiff. We are of the further opinion that Miss Dixon was obliged to anticipate that pedestrians would be using the roadway as a means of access to their automobiles which were parked near and around the fair site, and the fact that plaintiff was walking in the roadway that was normally used for vehicular traffic did not relieve her from a duty to exercise reasonable care to avoid running plaintiff down.
Though assigned as error, we note that the trial judge did not find the doctrine of last clear chance to be applicable, as he found the negligence of Miss Dixon as the cause in fact of the accident and the plaintiff free from negligence. In order to apply this doctrine, negligence must be present on the part of both plaintiff and defendant. St. Amant v. Travelers Insurance Company, 233 So.2d 23 (La.App. 4th Cir. 1970).
Assuming arguendo that the plaintiff was walking in the roadway with his back to overtaking traffic, the testimony of Mr. Eglin is convincing that plaintiff and Miss Sibley were in the roadway for such a length of time that Miss Dixon could and should have seen them. Therefore, although plaintiff may have been guilty of negligence, his negligence was not the cause in fact of the accident, since Miss Dixon had the last clear chance to avoid the accident, and her negligence consisted of failing to see what she could and should have seen.
It is settled law that the doctrine of last clear chance has application only when (1) plaintiff has placed himself in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) defendant could or should have discovered plaintiff's peril by the exercise of reasonable care; and (3) at the time defendant could or should have avoided the accident by the exercise of reasonable care. McDonald v. Scotlandville Fire Protection District Commission, 222 So.2d 324, 328 (La.App. 1st Cir. 1969).
Lastly, defendant complains that the award of the trial judge was excessive and plaintiff has answered the appeal claiming that it was inadequate. In his Written Reasons for Judgment the trial judge observed as follows:
"As a result of this collision plaintiff received injuries primarily to his right ankle and left leg. He was observed and hospitalized at the Baton Rouge General Hospital by Joseph P. Patin, a general surgeon. Plaintiff complained of pain in the chest, lumbar spine, right shoulder, right ankle, left ankle, left leg and right leg. He was bleeding from a large open would of the left lower leg, which was treated by Dr. Patin, along with other abrasions. He was referred to Dr. John Loupe for a nondisplaced fracture of the lower shaft of the tibia. Dr. Patin repaired the tendon of the left leg and splinted same and then admitted him to the hospital for elevation, rest and progressive healing. On February 9, 1972 plaintiff still complained of slight weakness and occasional stiffness of the left leg and some back pain, but Dr. Patin felt that these disabilities would regress completely in six to eight weeks. He felt the main permanent defects which could be expected would be scarring and some muscle weakness of the left calf.
"John F. Loupe, an orthopedic surgeon, saw plaintiff at the request of Dr. Patin and found an oblique nondisplaced fracture of the right tibia near the ankle joint. He applied a short-leg cast and ordered the leg elevated for two days in the hospital. The cast was removed in six weeks and Dr. Loupe felt that there was no permanent disability resulting from this fracture and saw plaintiff a *829 total of four times in his office and discharged him completely on February 8, 1972." (Written Reasons for Judgment, Record, pp. 23, 24)
We find no abuse of the trial judge's great discretion in his award of $4,000 to the plaintiff for pain and suffering. LSA-C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Pepper v. Glover, 241 So.2d 269 (La.App. 1st Cir. 1970).
For the above and foregoing reasons, the judgment of the trial court is affirmed, at the cost of defendant-appellant.
Affirmed.