621 So.2d 1174 (1993)
Antonial MILLER, Plaintiff-Appellee,
v.
Steven S. BAILEY, et al., Defendants-Appellants.
No. 92-1178.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1993.
*1178 Stephen Mark Morrow Sr., for Antonial Miller.
Gary James Beauchamp, for State, DOTD.
Edward M. Campbell, for State, DPS.
Before GUIDRY and WOODARD, JJ., and CULPEPPER,[*] J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
These appeals in eight consolidated cases arise out of an automobile accident. The issues presented on appeal relate to the trial judge's findings of fault, his apportionments of fault and awards of damages. We reverse in part, amend in part and affirm as amended.

FACTS
The automobile accident occurred on May 14, 1988, on La. Hwy. 13 in Evangeline Parish at 1:55 a.m., in front of Pierre's Place, a local bar. The highway runs approximately north and south. The bar is on the west side of the highway.
The bar was in a rural area; there were no other businesses near it. There was a small parking lot, sufficient for fifteen or twenty cars, between the bar and the highway. The area was unlit except for a lighted mobile sign and "porch lights" on the building.
On the night in question, cars were parked in the bar's parking lot and along the east and west shoulders of the highway in front of the bar. The highway shoulders were very narrow and bordered by ditches. Cars parked on the shoulders were also partially on the highway, leaving a little more than one lane's width for motorists to pass between the parked vehicles.
On May 14, 1987, as the bar was about to close and the patrons were leaving, a fight broke out between some of the bar patrons in the middle of the highway in front of the bar. Other bar patrons stood in and along the highway to watch the fight. Antonial K. Miller, who had just arrived at the bar, had stopped his GMC pickup truck in the northbound lane of Hwy. 13 and left it there. Danny Ortego, a guest passenger in Miller's truck, also exited the truck.
At about the same time, Stephen S. Bailey approached the bar in the southbound lane of Hwy. 13. Bailey was intoxicated and later pleaded guilty to D.W.I. charges. *1179 He had two guest passengers, Anthony Shane Richard and Deborah Savant. Richard called out to warn Bailey of the pedestrians and truck in the road. Bailey braked, hit at least one pedestrian, probably Lisa Savant, slid across the center line into the northbound lane and hit Miller's truck. Miller's truck was knocked back six feet by Bailey's vehicle; it, too, struck some of the pedestrians. Edwin Blaine Johnson, John Broussard, Stacy Guillory, Tina Marie Ortego, Charles Guillory and Miller were also injured by one or the other of the vehicles. Richard, Bailey's passenger, was injured as well.
These eight personal injury suits were filed individually by Miller, Richard, Broussard, Savant, S. Guillory, Johnson, C. Guillory and Ortego. Made defendants were Bailey, LIGA (substituted for Champion Insurance Co., Bailey's liability insurer), Miller, American Fidelity Fire and Casualty Insurance (for which LIGA was later substituted as Miller's liability insurer), the State, Department of Transportation and Development (DOTD), the State, Department of Public Safety and Corrections (DPS), and Pierre Catoire (owner of Pierre's Place). Additionally, Lisa Savant made her UM insurer, State Farm Automobile Insurance Co., a defendant and Tina Ortego made her UM insurer, LIGA (substituted for Champion Insurance Co.), a defendant.
The DOTD and DPS filed motions for summary judgments on the issues of their liability, which were denied. Various other exceptions, cross-claims, third party motions, and motions for summary judgment were subsequently filed, none of which are involved in this appeal.
Bailey and LIGA deposited $19,200, Bailey's liability insurance limit less the deductible, into the registry of the court prior to trial. All plaintiffs settled with Bailey for that amount and dismissed their claims against him and his insurer (LIGA). All incidental claims against Bailey were also voluntarily dismissed.
After trial, Miller's insurer, LIGA, deposited the limits of Miller's liability insurance into the registry of the court. LIGA was dismissed from the suits, but Miller was not. The proceeds were apportioned as follows: Johnson$8770.67; Broussard $1403.31; Ortego$613.95; S. Guillory $491.16; C. Guillory$350.83; Savant $8770.67; Richard$122.79.
Before trial, defendant Pierre Catoire cleared the property where his bar had been and left town. He was not present at trial and is not involved in any capacity in this appeal.

TRIAL ACTION
The eight suits were consolidated for trial. The trial was then bifurcated as to liability and damages.
At the liability phase of the trial, the judge apportioned fault as follows: Stephen S. Bailey40%; Antonial K. Miller 10% (but 15% in his own suit); State, DOTD22%; State, DPS18%; plaintiffs collectively (except Anthony Shane Richard and Antonial K. Miller)5%[1]; Anthony Shane Richard2%; other persons3%.
In the assessment of damages, the trial judge awarded: Antonial K. Miller$12,500; Anthony Shane Richard$3500; John Broussard $40,000; Lisa Savant$250,000; Stacy Guillory$14,000; Edwin Blaine Johnson$250,000; Charles Guillory $10,000; Tina Marie Ortego$17,500.

APPEALS
These cases present multiple appeals. The DPS appeals the finding and allocation of fault in all eight cases and the award of damages to Edwin Blaine Johnson in his *1180 case alone. The DOTD appeals the finding and allocation of fault in all cases. Edwin Blaine Johnson appeals the award of damages in his case. LIGA appeals the award of damages to Tina Marie Ortego in her case alone.
Answers to the appeals were filed by Stacy Guillory, John Broussard and Lisa Savant. Each of these parties appeals both the apportionment of fault and the award of damages.
The appellees are Anthony Shane Richard, Charles Guillory, Antonial Miller, and Tina Marie Ortego.
We will first address the issues of each party's fault, then the allocation of fault, and, finally, the damages awarded.

FAULT

Plaintiffs
The trial judge held plaintiffs (except Miller and Richard) "collectively" 5% at fault (see footnote 1) for standing in the highway. LSA-R.S. 32:213(A) charges pedestrians crossing a roadway at any point, other than a marked cross walk or at an intersection, with a duty to yield the right of way to all vehicles upon the roadway. Therefore, a pedestrian is charged with a duty to observe approaching traffic on attempting to cross a street or roadway. Thissel v. Commercial Union Ins. Co., 476 So.2d 851 (La.App. 2d Cir.), writs denied, 479 So.2d 361, 479 So.2d 366 (La.1985); Finley v. North Assur. Co. of Am., 476 So.2d 837 (La.App. 2d Cir.1985); St. Amant v. Travelers Ins. Co., 233 So.2d 23 (La.App. 4th Cir.1970). We note there was testimony that it was difficult for the pedestrians to see approaching traffic due to the visual obstruction caused by the illegally parked cars. This circumstance places a greater duty of care on the pedestrians. See Brooks v. Allred, 573 So.2d 1301 (La. App. 2d Cir.1991); Matthews v. Camus Elec. Co., 210 So.2d 189 (La.App. 2d Cir. 1968). Under the standard of appellate review set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), and its progeny, we find no manifest error in the trial judge's determination that the plaintiffs were at fault for failing to use due care in standing in or attempting to cross the highway and also for failing to yield to an approaching motorist.

Third Persons
The trial judge held "third persons" 3% at fault, collectively, for obstructing the highway by parking their vehicles on it. LSA-R.S. 32:296 expressly prohibits parking unattended vehicles on a highway shoulder when doing so obstructs the flow of traffic or is a hazard to public safety. See Suhr v. Felter, 589 So.2d 583 (La.App. 1st Cir.1991), writ denied, 590 So.2d 596 (La.1992).
The evidence clearly established that the vehicles parked on both of the highway shoulders obstructed the flow of traffic on Hwy. 13. This imperiled approaching motorists and pedestrians. The pedestrians could not see approaching vehicles. Also, the parked vehicles prevented Bailey from using the road shoulder in an emergency maneuver to avoid the pedestrians and the vehicle in the road and, thus, were a causal factor in the accident. Therefore, the trial judge did not manifestly err in holding the "third persons" who had illegally parked on Hwy. 13 at fault. We note, also, that some of these "third persons" were undoubtedly some of the plaintiffs.

Miller
The trial judge held Miller 10% at fault, in all of the cases except his own, for parking in the highway in front of Pierre's Place, a clear violation of LSA-R.S. 32:141(A). The trial judge held Miller 15% at fault in his own case. See Pierre v. Allstate Ins. Co., 242 So.2d 821 (La.1970); Suhr v. Felter, supra. Miller's vehicle obstructed traffic and obstructed Bailey's path when he tried to avoid the pedestrians in the road. The trial judge did not manifestly err in holding Miller at fault for the accident.

*1181 Bailey
The trial judge held Bailey 40% at fault for causing the accident. The trial judge found that Bailey was driving while intoxicated and was driving at an excessive speed. Clearly, Bailey violated his duty to maintain a lookout for pedestrians and to anticipate that pedestrians would be using the roadway as a means of access to the vehicles parked around the bar. See LSA-R.S. 32:214; Thissel v. Commercial Union Ins. Co., supra; Tabor v. Southern Farm Bureau Cas. Ins. Co., 281 So.2d 824 (La. App. 1st Cir.), writ denied, 283 So.2d 771 (La.1973). Clearly, the trial judge did not err in finding Bailey at fault for the accident.

DPS
The trial judge held the DPS 18% at fault for failure to enforce the law against parking on the highway shoulders in a manner which obstructs traffic and in failing to post the highway with "No Parking" signs. We find the trial judge erred as a matter of law in holding the DPS at fault.
Initially, we note that, under the evidence adduced at trial, the DOTD, rather than the DPS, is responsible for placing signs on the highway. See LSA-R.S. 48:21. However, the DPS, through its police officers, was clearly responsible for enforcement of the traffic regulations. LSA-R.S. 32:5. The trial judge found that the failure of the DPS to enforce the no parking laws was a cause of the accident. We disagree.
The duty of members of the police department has been established jurisprudentially and is essentially that of maintaining peace and order, preventing and detecting crime, and enforcing the law. This duty is one owed to the public generally, but may be transformed into a duty owed to an individual where a personal or individual relationship (a one-to-one relationship) arises between the police officer and an individual. Another important exception to the public duty doctrine arises when liability can be founded upon the violation of a duty that would be generally considered to be owed to the public, if the statute or ordinance setting forth the duty indicates by its language that the duty is designed to protect a particular class of individuals. Zeagler v. Town of Jena, 556 So.2d 978 (La.App. 3d Cir.), writ denied, 560 So.2d 14 (La.1990), and cases cited therein. Also, Mack v. City of Monroe, 595 So.2d 353 (La.App. 2d Cir.), writ denied, 599 So.2d 314 (La.1992); Nichols v. Nichols, 556 So.2d 876 (La.App. 2d Cir.), writ not cons.'d, 561 So.2d 92 (La.1990).
We find this case to be readily distinguishable from those cases which have held the DPS liable for the failure of a police officer to fulfill his duties, such as Duvernay v. State, through Dept. of Pub. Safety, 433 So.2d 254 (La.App. 1st Cir.), writ denied, 440 So.2d 150 (La.1983). This case simply does not present a one-to-one relationship between a police officer and an individual.
Moreover, we do not find that the plaintiffs fall within the class of individuals that LSA-R.S. 32:296 was designed to protect. LSA-R.S. 32:296 prevents parked vehicles from obstructing traffic. Therefore, it is intended to protect motorists who are driving on the road. The plaintiffs, who were pedestrians rather than motorists, do not fall within the ambit of protection afforded by the statute. Contrast Duvernay v. State, through Dept. of Pub. Safety, supra.
LSA-R.S. 32:296 makes it illegal for people to park unattended vehicles on the highway shoulder if doing so obstructs traffic. Motorists are held to know and obey traffic laws. Moreover, the police had ordered the cars moved off of the highway around Pierre's Place several times before. On the night of the accident, the officer on duty was involved with another automobile accident elsewhere and could not be at Pierre's Place. After the accident occurred, an off-duty officer had to be called in to handle it. The police simply did not have a duty to post an officer near the bar every night to enforce compliance with the law.
Therefore, we find that the trial judge erred as a matter of law in finding the DPS *1182 had a duty to enforce the no parking laws under the circumstances of this case. We reverse the judgment to assess -0- fault to the DPS.

DOTD
We also find the trial judge erred in holding the DOTD 22% at fault for failing to post "No Parking" signs on Hwy. 13 around Pierre's Place. The DOTD had no duty to post the signs; also, we find no causal connection between the accident and the lack of signs. The trial judge further erred in holding the DOTD at fault for failing to reduce the speed limit and because the road shoulders were narrow.
First, we have noted DOTD's arguments as to the admission of Trooper Meyers's February 1988 letter to the DOTD, notifying it of the need for "No Parking" signs on Hwy. 13 and of Trooper Meyers's testimony concerning the letter. DOTD filed a pretrial motion in limine to exclude the letter under 23 U.S.C. § 409.[2] The trial judge admitted the evidence because the DOTD failed to show Hwy. 13 was part of a federally funded project or program, though it is part of the federal highway system. We find the trial judge erred as a matter of law in admitting the evidence and do not consider it in this appeal. See 23 U.S.C. § 409; Martinolich v. Southern Pacific Trans. Co., 532 So.2d 435 (La.App. 1st Cir.1988), writ denied, 535 So.2d 745 (La. 1989), cert. denied, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1027 (1989). However, as stated by the trial judge, that evidence was not the only basis for the assessment of fault to the DOTD. We turn now to those issues.
Under either LSA-C.C. art. 2315 or art. 2317, the DOTD's liability to the plaintiffs hinges on whether it breached its duty to the plaintiffs. While the basis for determining the existence of the duty is different in art. 2317 strict liability cases and in art. 2315 negligence cases, the duty that arises is the same.
DOTD's duty to travelers is to keep the state's highways and their shoulders in a reasonably safe condition for persons using reasonable care under the circumstances. Whether DOTD breached this duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition, will depend upon the particular facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La.1988), and cases cited therein; Robbins v. Weaver, 539 So.2d 670 (La.App. 3d Cir.1989).
The trial judge found the DOTD had a duty to post "No Parking" signs on Hwy. 13 near Pierre's Place because the motorists parked on both shoulders, combined with the narrow shoulders, caused an unreasonably dangerous condition by narrowing the travel portion of the highway. The trial judge found that "No Parking" signs would have alleviated the hazard. The DOTD argues on appeal that it owed no duty to the plaintiffs to post the "No Parking" signs in order to enforce LSA-R.S. 32:296, which prohibits parking on shoulders so as to obstruct traffic. Also, it argues that there is no causal connection between the lack of signs and this accident.
At the scene of the accident, the roadway surface was in good condition. It was free from ruts and potholes and there was no abrupt dropoff between the paved portion of the road and the gravel shoulder. Nothing in the record mentioned that prior accidents had occurred at this location. Neither the road nor its shoulders (which we will discuss further later) were in an unreasonably dangerous condition for motorists. *1183 The only dangerous condition was the presence of motorists illegally parked on both sides of the Hwy. 13.
We hold that DOTD had no duty, under the circumstances of this case, to post "No Parking" signs on Hwy. 13 around Pierre's Place. Parking was prohibited on the shoulders of Hwy. 13, except in emergency situations, under LSA-R.S. 32:296, since a vehicle could not park completely on the shoulder. Motorists are held to know the traffic laws. The DOTD does not have a duty to post signs to remind motorists of laws they are held to know and obey.
Although we find no fault by DOTD, the lack of "No Parking" signs was not a legal cause of the accident. The supreme court has recently reenunciated the principles of a duty-risk analysis of causation in Faucheaux v. Terrebonne Consol. Govt., 615 So.2d 289 at 292 (La. 1993):
"(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk and harm caused within the scope of protection afforded by the duty breached?
* * * * * *
"Cause-in-fact is generally a `but for' inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause-in-fact. Fowler v. Roberts, 556 So.2d 1, 5 (La.1989). To the extent that the defendant's actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620, 622 (1972).
* * * * * *
"Duty is a question of law. Simply put, the inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of fault to support his claim. Green, The Causal Relation Issue and Negligence Law, 60 Mich.L.Rev. 543, 562-63 (1962).
* * * * * *
"The scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rules of conduct are designed to protect some persons under some circumstances against some risks. Gresham v. Davenport, 537 So.2d 1144, 1147 (La.1989); Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60, 73 (1956). The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. Crowe, The Anatomy of a Tort-Greenian, As Interpreted by Crowe Who Has Been Influenced by MaloneA Primer, 22 Loy.L.Rev. 903 (1976). In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Hill, supra."
We cannot assume that no one would have parked on the road shoulders if there had been "No Parking" signs posted. The police had requested that everyone remove their parked cars from the highway several times before, yet people continued to park there in defiance of the law and the police. While signs may have stopped some people from parking along Hwy. 13, we do not find that the lack of signs was a cause in fact of this accident. We cannot state that "but for" the DOTD's failure to post "No Parking" signs, no one would have parked on the road shoulders, the plaintiffs would not have been standing on Hwy. 13, Miller would not have left his truck parked in the northbound lane of Hwy. 13, and Bailey would not have been driving while intoxicated and would not have skidded and hit any pedestrians or Miller's truck. This accident was clearly caused by the motorists parked illegally on the shoulders, the pedestrians, Miller, and Bailey. We find that the lack of "No Parking" signs was not a causal factor in this accident and the trial *1184 judge manifestly erred in finding otherwise.
The trial judge also found the DOTD was at fault for failing to have the speed limit reduced in the vicinity of the bar. We find no authority to require the reduction of the speed limit solely due to the presence of a small bar on a rural road. The evidence does not show that the speed limit was excessive. We note that a speed limit is only a maximum limit; motorists have a duty to drive at a speed reasonable for the conditions of the road, the weather, the traffic and the time of day. See LSA-R.S. 32:64.
Finally, the trial judge held the DOTD at fault for failing to provide adequate road shoulders for parking. The expert testimony introduced at trial indicated that Hwy. 13 complied with the standards in effect at the time it was built, although it is substandard by today's road design standards.
Hwy. 13 has narrow shoulders bordered by roadside ditches. These characteristics of Hwy. 13 are not unique in Louisiana. The failure of DOTD to reconstruct the state's highways does not establish the existence of a hazardous defect. Under the circumstances of this case, the road shoulders did not create the hazardthe hazard was created by the motorists parked illegally on the shoulders, the pedestrians, Miller and Bailey. See Holloway v. State, through DOTD, 555 So.2d 1341 (La.1990); Manasco v. Poplus, 530 So.2d 548 (La. 1988); Hanchey v. State, DOTD, 597 So.2d 1252 (La.App. 3d Cir.), writ not cons.'d, 604 So.2d 962 (La.1992). The trial judge erred as a matter of law in holding that the narrow road shoulders are defective simply because they are narrow.
Also, we do not find that plaintiffs have shown that the narrow shoulders were a cause of the accident. It is sheer speculation to assume that Bailey would not have hit any of the pedestrians standing in the road or the truck parked in the road if the shoulders had been wide enough to fully accommodate the parked vehicles. Miller and the pedestrian plaintiffs would still have been in the road. The trial judge manifestly erred in finding that the narrow shoulders were a cause of the accident. See Manasco v. Poplus, supra. Also, Nichols v. St. Helena Parish Police Jury, 604 So.2d 1023 (La.App. 1st Cir.), writ denied, 605 So.2d 1378 (La.1992); Galliano v. State, through DOTD, 572 So.2d 366 (La. App. 1st Cir.1990).
Therefore, we find the trial judge erred in assessing 22% fault to the DOTD. We reverse the trial court's judgment to assess -0- fault to the DOTD.

Richard
The trial judge assessed Anthony Shane Richard with 2% fault for failing to warn Bailey of the obstructions in the road sooner than he did. Richard was a guest passenger in Bailey's vehicle. It was he who brought the presence of the pedestrians and Miller's truck to Bailey's attention. We note that the other guest passenger in Bailey's vehicle, Deborah Savant, was not likewise held at fault.
The trial court cast Richard in judgment to the other plaintiffs for 2% of their damages and held him liable jointly with the other defendants. However, Richard was not made a party-defendant; he was only a party-plaintiff in his own case. A judgment against a party who is not named as a defendant is absolutely void. Krueger v. Tabor, 546 So.2d 1317 (La.App. 3d Cir.1989), and cases cited therein; LSA-C.C.P. art. 1841. Therefore, the trial judge erred as a matter of law in holding Richard 2% at fault in any case other than his own (our Docket No. 92-1179). We amend the judgments to assess -0- fault to Richard in all of the cases except his own.
Moreover, we find the trial judge erred as a matter of law in assessing fault to Richard in his own suit. The law is well settled that a guest passenger generally does not have a duty to supervise the driver. Adams v. Security Ins. Co. of Hartford, 543 So.2d 480 (La.1989); Loveday v. Travelers Ins. Co., 585 So.2d 597 (La.App. 3d Cir.), writ denied, 590 So.2d 65 (La.1991). This case falls within that general rule; Richard had no duty to lookout *1185 for and warn Bailey of obstructions in the road.
However, Richard failed to appeal the judgment or to answer the appeal. Therefore, we must affirm the assessment of 2% fault to Richard in his own suit.

REAPPORTIONMENT OF FAULT
Since we have found that neither the DPS nor the DOTD were at fault for the accident in this case, we must reapportion the fault to the extent that 40% of the fault must now be redistributed. Additionally, 2% of the fault must be redistributed in all cases except Richard's. We use the guidelines in Watson v. State Farm Cas. Ins. Co., 469 So.2d 967 (La.1985).
The trial judge clearly found the plaintiffs to be more at fault than the third persons (i.e. the illegally parked motorists), and obviously found Bailey and Miller to be more at fault than the plaintiffs. The trial judge did not manifestly err in this determination and we will not disturb it. See Rosell v. ESCO, 549 So.2d 840 (La.1989). Therefore, we will reapportion the fault in each case, except Richard's and Miller's, as follows: Bailey50%; Miller20%; plaintiffs(each in his own case)17%; third persons13%. In Miller's suit, fault is reapportioned: Bailey50%; Miller37%; third persons13%. In Richard's suit, fault is reapportioned: Bailey65%; Miller20%; third persons13%; Richard 2%.

DAMAGES
LIGA has appealed as excessive the award of damages to Ortego. S. Guillory, Johnson, Broussard, and Savant have appealed their awards as inadequate. The trial judge gave comprehensive oral reasons for the awards in each case and we find the awards are well supported. However, we have included brief summaries of the injuries and awards in each appealed case. The appeal by the DPS, alleging the excessiveness of the award to Johnson, is not addressed since it is now moot under our holding on the issue of liability.

Tina Marie Ortego
LIGA appeals the award of $17,500 to Ortego for her personal injuries. LIGA stands as Ortego's underinsured motorist insurer, in substitution for the defunct Champion Insurance Co. LIGA was cast in judgment to Ortego for $10,000.
LIGA argues on appeal that it was no longer a party to the suit after May 8, 1991, and therefore could not be cast in judgment to Ortego. On May 8, 1991, upon motion by Bailey, LIGA and all plaintiffs, the trial judge signed an order dismissing all claims against Stephen S. Bailey and LIGA, as Bailey's liability insurer (in substitution for Champion Insurance Co.), upon the deposit into the court's registry of the limit of Bailey's liability coverage. LIGA's position is that the order dismissed it from these suits entirely, in its capacities as Ortego's UM insurer (in substitution for Champion Insurance Co.) and as Miller's liability insurer (in substitution for Fidelity Fire & Casualty Insurance Co.), as well as in its capacity as Bailey's liability insurer. However, the order states that it dismisses all claims against Stephen S. Bailey and LIGA. We do not construe the order, which was drawn up by LIGA's attorney, to mean that any claims against Miller and LIGA, and against Ortego and LIGA, are likewise dismissed. There is no "cause" for these alleged releases. LSA-C.C. art. 1966 and art. 1967. Such a construction is not within the plain meaning of either the motion for dismissal or the order.
Next, LIGA argues that the award of $17,500 is excessive. We disagree. Ortego suffered severe bruising and abrasions to her right leg, the extreme swelling of which caused a painful condition called anterior compartment syndrome. This lasted about four months. She also bruised her right arm. She used a wheelchair for one month after the accident and crutches for three months after that. The parties stipulated to medical expenses of $1,289.91 and past lost wages of $1,235.91. The trial judge awarded her $14,974.18 general damages for a total award of $17,500. Although on the high side, we find no abuse of the trial court's much discretion in *1186 awarding Ortego $17,500. The cases cited by LIGA in support of a lower award are simply not apposite to this case.

Stacy Guillory
Stacy Guillory appeals, and very briefly argues, that his award of $14,000 for personal injuries is inadequate. We disagree.
Stacy was struck by one of the vehicles. He sustained a concussion, a cervical sprain, a lumbar strain, a contusion to his left kidney which caused him to urinate blood, muscularligamentous injuries to his left wrist and his right knee, and a slight spasm of the trapezius muscle. The parties stipulated to Stacy's medical expenses of $1,852.68. The trial judge awarded $12,147.32 general damages, for a total award of $14,000. After reviewing the evidence and the jurisprudence, we find no abuse of the trial judge's great discretion in the award of damages to Guillory.

Edwin Blaine Johnson
Johnson very briefly contends that his award of $250,000 for his personal injuries is inadequate. Johnson was eighteen years old at the time of the accident. He was struck by one of the vehicles. He sustained a concussion, a closed head injury which aggravated and made symptomatic his preexisting (congenital) hydrocephalus, his right leg was broken in two places with extruding bone, and he sustained multiple bruises and abrasions. Dr. Patton testified that the hydrocephalus was definitely asymptomatic prior to the accident and that the accident caused it to be symptomatic. Johnson underwent four surgeries on his leg, including a bone graft from his hip to his leg. He was in a cast for eighteen months and had to receive his eleventh grade education at home. He can no longer participate in the strenuous physical activities he used to do, such as breaking and riding horses and working on his father's farm, since a blow to his head could cause neurological deterioration and necessitate surgery to drain the excess fluid. He still has problems with swelling in his leg and he suffers from severe periodic headaches. He also suffered memory impairment for a while after the accident.
Johnson's medical bills were stipulated to be $25,341.89, including physical therapy. The trial judge awarded $13,320 for home care and $211,338.11 general damages. We do not find an abuse of the trial court's great discretion in awarding damages.

John Michael Broussard
Broussard very briefly argues on appeal that his award of $40,000 personal injury damages is inadequate. Broussard was struck by one of the vehicles and sustained a broken right leg (in two places), bruises, and a blood clot in his right shoulder. He was hospitalized for a week after the accident. After he went home, he was in a wheel chair for three weeks. His leg was in a cast about four months. Afterwards, he used crutches and received physical therapy. He was recovered within seven months.
Broussard still suffers from a calcium buildup in his leg and his leg hurts when he stands too long or the weather changes. He is unable to do manual labor which involves much standing.
The parties stipulated that Broussard's medical expenses were $9,002.18. The trial judge awarded him $30,997.72 general damages. We find no clear abuse of the trial judge's great discretion in awarding damages.

Lisa Savant
Finally, Savant very briefly contends on appeal that her award of $250,000 damages for the personal injuries she sustained as a result of being hit by Bailey's vehicle is inadequate. Savant was twenty years old at the time of the accident.
Savant sustained a head injury, her left arm was fractured, her pelvis was fractured, her left leg was broken, she had cuts in her face and head and various other bruises and abrasions. She was in a coma for about two weeks. Savant's left leg was in traction for three weeks and then she underwent surgery to have a rod and some permanent screws put in her leg and knee. Her knee is disfigured. Her left *1187 ankle is scarred. She also has scars on her face and head.
Savant lost the vision in her right eye for two weeks due to a blood clot behind it. Her brain was swollen for about two weeks. She has sustained memory impairment and has had two "blackouts", or memory lapses, in 1990 when she had no memory of what she did for up to forty-eight hours past. Finally, she had to take a fourteen and one-half month medical leave from work due to the blackouts and constant pain and swelling in her leg, for which her physicians prescribed a lot of rest.
Savant now suffers from headaches daily. Plastic surgery has been recommended for her scars.
The parties stipulated to past medical expenses of $16,393.23. The trial judge awarded $15,414 for past lost wages, $6,000 for future medical expenses, and $212,192.77 general damages. We find no abuse of the trial judge's great discretion in awarding $250,000 damages to Savant.

CONCLUSION
In summary, we reverse the judgment of the trial court as to the DOTD and the DPS and hold them each -0- at fault for the plaintiffs' damages. We further hold that Richard is not liable for any other plaintiff's damages and reverse the trial court's judgment accordingly. However, we affirm the trial judge's assessment to Richard of 2% contributory negligence in his own case.
We amend the judgment of the trial court to apportion liability in each case, except Richard's and Miller's, as follows: Bailey50%; Miller20%; plaintiffs17% each in his own case; third persons (non-parties)13%. In Miller's case, liability is apportioned: Bailey50%; Miller37%; third persons (non-parties)13%. In Richard's case liability is apportioned: Bailey 65%; Miller20%; third persons (non-parties)13%; Richard2%.
The quantums of damages are affirmed. In light of the reapportionment of fault, Antonial K. Miller is the only defendant tortfeasor remaining to be cast in judgment. Therefore, Miller will receive -0- damages. We award damages against Miller and in favor of the plaintiffs, with credits for the amounts paid by LIGA as Miller's liability insurer, as follows:
Anthony Shane Richard-$577.21
($3500 × 20% = $700 less $122.79)
John Broussard-$6596.69
($40,000 × 20% = $8000 less $1403.31)
Lisa Savant-$41,229.33
($250,000 × 20% = $50,000 less $8770.67)
Stacy Guillory-$2308.84
($14,000 × 20% = $2800 less $491.16)
Edwin Blaine Johnson-$41,229.33
($250,000 × 20% = $50,000 less $8770.67)
Charles Guillory-$1649.17
($10,000 × 20% = $2000 less $350.83)
Tina Marie Ortego-$2886.05
($17,500 × 20% = $3500 less $613.95)

DISPOSITION OF MILLER'S SUIT
For the reasons given, the judgment of the trial court is reversed as to the State, Department of Transportation and Development, the State, Department of Public Safety and Corrections, and Anthony Shane Richard. Plaintiff Miller's claims against them are dismissed, and the award to Miller is reduced to -0-.
*1188 The judgment of the trial court is amended to assess fault in Antonial K. Miller's suit as follows: Stephen S. Bailey50%; Antonial K. Miller37%; third persons (non-parties)13%.
Costs in the trial court and of this appeal are assessed to the plaintiff, Antonial K. Miller. Otherwise than as herein reversed or amended, the judgment appealed is affirmed.
REVERSED in PART; AFFIRMED in PART; AMENDED and RENDERED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The trial court held the six pedestrian-plaintiffs 5% at fault collectively and divided that 5% among them when awarding damages to each plaintiff. However, the trial court failed to award the remaining 5/6 of the 5% fault and damages against the other five pedestrian-plaintiffs in six cases. This resulted in an allocation of less than 100% fault in each case. In light of the nonassessment of 5/6 of 5% fault in six of the cases, we believe the trial judge intended to assess 5% fault against each pedestrian-plaintiff in his or her own case (Broussard, Savant, S. Guillory, C. Guillory, Johnson, and Ortego). We amend the judgment to assess each plaintiff with 15% fault in his or her own case.
[2] 23 U.S.C. § 409 provides:

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.