Robert E. DENHAM, Plaintiff-Appellee, Cross–Appellant,

v.

UNITED STATES of America, Defendant-Appellant, Cross-Appellee.

No. 86–1927.

United States Court of Appeals, Fifth Circuit.

Dec. 29, 1987.

Irene M. Solet and John F. Cordes, Atty., Appellate Staff, Civil Div., Washington, D.C., and Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for the U.S.

Arthur Baron, Orlando, Fla., for Robert E. Denham.

Before WILLIAMS and HIGGINBOTHAM, Circuit Judges, and SANDERS[*], District Judge.

SANDERS, District Judge:

The United States appeals a judgment entered against it in favor of Robert Denham under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 (the "FTCA"). After a bench trial, the United States District Court awarded Denham $1,082,017.00 for injuries he suffered at a swimming area in a park owned and operated by the United States Army Corps of Engineers (the "Corps"), 646 F.Supp. 1021. The United States raises two points of error: that the district court's determination that the Corps was grossly negligent under Texas law was erroneous and that the United States' actions properly should have been found to be within the FTCA's discretionary function exception. On cross-appeal, Denham alleges that the district court erred in finding him 30% contributorily negligent and that the damages awarded are inadequate. Because we find no error in the district court's decision, we affirm its judgment.

I.

Temple Lake Park on Belton Lake in Belton, Texas, is owned and operated by the United States Army Corps of Engineers and is part of a flood control reservoir. The park contains a designated swimming area and a beach. The swimming area is delineated by surface buoys that are secured by concrete anchors of approximately 1½ cubic feet in size. The buoys and anchors are positioned and maintained by the Corps.

On May 28, 1983, Denham and several friends, all of whom were active duty servicemen on liberty from Fort Hood, Texas, went to Temple Lake Park. After picnicking and swimming most of the day, Denham was injured when, within the boundaries of the swimming area, he dove from knee-deep to waist-deep water and struck his head. The blow broke Denham's neck and rendered him a quadriplegic.

The district court determined that Denham had struck an abandoned concrete anchor that had originally been placed by the Corps to secure the surface buoys delineating the swimming area. The court found that the Corps knew both that the buoys occasionally became detached and that there were abandoned anchors within the swimming area. Based upon these findings, the court adjudged the Corps grossly negligent under Texas law and liable to Denham for his damages, which the court set at $2,937,947.00. However, the court also found Denham 30% contributorily negligent and reduced his award accordingly. After setting off the value of Denham's past and future veterans' benefits and other settlements, the court awarded final

---

[*] Acting Chief Judge of the Northern District of Texas, sitting by designation.

judgment in Denham's favor for $1,082,-017.00. This appeal followed.

## II.

The first issue this court must determine is jurisdictional: the United States maintains that the act of the Corps found to constitute gross negligence was a discretionary function within the meaning of 28 U.S.C. § 2680(a) and thus outside the scope of the FTCA. If this position is correct, Denham's claim is barred by sovereign immunity. *See Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

This court has on many occasions considered the scope of the discretionary function exception. In *Wysinger v. United States,* 784 F.2d 1252 (5th Cir.1986), we stated that discretionary function is to be broadly interpreted. At the same time, we held there that "once the government has made a decision to act the government is responsible for acts negligently carried out even though discretionary decisions are constantly made as to how those acts are carried out." *Id.* at 1253. We elaborated upon this distinction in *Wiggins v. United States,* 799 F.2d 962, 966 (5th Cir.1986):

> Once the government does undertake to supply a service, then it must be held responsible for negligent acts in supplying the service. This means that the discretionary exception only reaches the discretionary decision as to whether to supply the service or not. But once the discretionary decision has been made to supply the service, then the very purpose of the Tort Claims Act was to waive sovereign immunity and allow recovery for negligent actions of the government beyond the discretionary decision.

*Wysinger* concerned a drowning that occurred at a swimming site operated by the United States Forest Service. The plaintiffs sought to hold the United States liable because no lifeguard was provided at the site. The Forest Service had posted signs warning that there was no lifeguard and that one should swim at one's own risk. We held that the Forest Service's decision that no lifeguard was necessary at the site

fell within the discretionary function exception. We noted, though, that if "the government had negligently failed to warn of dangers at the swimming site [there] would ... be jurisdiction under the Federal Tort Claims Act." 784 F.2d at 1254.

*Wysinger* relied upon our decision in *Butler v. United States,* 726 F.2d 1057 (5th Cir.1984), where we held that once the critical discretionary decision is made, the government is "required to perform the related operational functions with reasonable care." *Id.* at 1063. In *Butler,* several people had drowned when swimming at a state park after they stepped into an underwater depression. The depression had been created by dredging operations the Army Corps of Engineers undertook while repairing a hurricane-damaged seawall. We held that while the decision to dredge for sand needed to repair the seawall was a discretionary function, the failure either to fill in the depression or adequately to warn swimmers of the danger was an operational function for which the United States could be held liable under the FTCA. *Id.* at 1063–64.

In the present case, the district court held that the critical discretionary decision was to create a designated swimming area at Temple Lake Park. The court held that actions taken in implementing that decision were not protected by the discretionary function exception. Accordingly, the court held the United States liable for creating the danger that resulted in Denham's injury.

■ The United States complains that the district court erred by applying the discretionary function analysis in a rigidly chronological fashion. It contends that the decision not to check the swimming area for underwater hazards was itself discretionary and hence could not be the basis for imposing liability under the FTCA. We do not agree. The government's approach would subsume practically any decision within the discretionary function exception and thereby vitiate the FTCA. Denham was injured because the Corps chose to ring the swimming site with concrete blocks and then failed to ensure that they did not drift

into an area where they would endanger swimmers. The Corps here was performing an operational function, and it did not have the discretion to do so negligently. *See Seaboard Coast Line Railroad Co. v. United States*, 473 F.2d 714, 716 (5th Cir. 1973). As in *Butler*, "the government created the danger after the critical discretionary decision had been made." *Wysinger*, 784 F.2d at 1253.

Of course, for the purposes of delineating the limits of the FTCA's waiver of sovereign immunity, the labeling of a decision as discretionary is to a certain extent conclusory. As we recognized in *Wysinger*, there are discretionary elements in all decisions. The ultimate question, as stated by the Supreme Court, is "whether the challenged acts ... are of the nature and quality that Congress intended to shield from tort liability." *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). The actions that led to Denham's injury were not such acts. We do not believe that Congress intended one who was injured because of a danger negligently created by the Corps within a designated swimming area to have no legal remedy.

### III.

### A.

The United States is liable under the FTCA "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Like many other states, Texas has a recreational use statute limiting the liability of landowners who allow others to use their property for recreation. Tex.Civ.Prac. & Rem.Code §§ 75.001–75.003. The statute provides that such a landowner does not "owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises." *Id.* at § 75.002(2). However, the statute does not shield the landowner from "any liability that would otherwise exist for deliberate, wilful, or malicious injury to a person or to property." *Id.* at § 75.003(a).

Under Texas law, the duty owed to a trespasser is "not to injure him willfully, wantonly or through gross negligence." *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 933 (Tex.Civ.App.1981, writ ref'd n.r.e.). In the context of reviewing exemplary damages awards, the Texas Supreme Court has defined gross negligence to be "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981) (quoting *Missouri Pacific Ry. v. Shuford*, 72 Tex. 165, 171, 10 S.W. 408, 411 (1888)).

Accordingly, the United States may be held liable for Denham's injuries if the conduct of the Corps inflicted "deliberate, wilful, or malicious injury" or if it exhibited a "conscious indifference" to Denham's safety. Applying this standard, the district court found the Corps to be grossly negligent. It held that "[t]he wilful failure to regularly check the bottom of the lake for underwater hazards and, in particular, for not examining it after becoming aware that more than one buoy anchor had become unattached demonstrated a conscious indifference to the safety of the facility's visitors." The United States challenges the district court's holding. It contends that the court misapplied Texas law and that the facts do not support a finding of gross negligence.

### B.

The United States maintains that in holding it liable for Denham's injuries the district court eviscerated the distinction between a trespasser and a licensee. Under Texas law, the same duty is owed to a trespasser and to a licensee, with the "exception ... that when a licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe." *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974). The United States urges that the district court's gross negli-

gence finding effectively holds it liable for the Corps' failure to warn of or make safe a known hazard and that under Texas law this is the duty owed to a licensee, not to a trespasser.

■ The United States' argument is flawed. It assumes that a failure to warn can in no circumstance itself constitute gross negligence. This conclusion, though, does not follow from the imposition upon a licensor of an additional duty to warn, over and above the duty to refrain from injuring willfully, wantonly, or through gross negligence. The effect of the greater duty owed to a licensee is to impose liability even where the failure to warn of or make safe a known hazard would not be grossly negligent. On the other hand, liability may stem from the failure to warn a trespasser only if that failure, under all the surrounding circumstances, exhibits "a conscious indifference to the rights or welfare" of others. The distinction between the duties owed to a licensee and to a trespasser is that while one always has the duty to warn the former of a known hazard, one must warn the latter only if the failure to do so would be grossly negligent. The United States' contention that a failure to warn or make safe can never constitute gross negligence is based upon a false syllogism and, furthermore, has no support in Texas law.[1]

### C.

The United States also contends that the evidence was insufficient to support the district court's finding that the Corps' actions constituted gross negligence. Texas law distinguishes between negligence and gross negligence on the basis of the defendant's state of mind. *Clifton v. Southern Pacific Transportation Co.*, 709 S.W. 2d 636, 640 (Tex.1986). The Texas courts have made clear that the state of mind required to constitute gross negligence can be shown by objective, as well as subjective, evidence. "[A] mental state may be inferred from actions. Considering all actions or circumstances indicating a state of mind amounting to conscious indifference to the rights of others, a plaintiff may objectively prove a defendants' gross negligence by proving that, under the surrounding circumstances, a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others." *Id. See also Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 573 (Tex.1985); *Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1374 (5th Cir.1982).

■ The United States claims that there was insufficient evidence to support the district court's finding that Corps employees knew or should have known of the hazards in the swimming area. This is a finding of fact, which we are bound to uphold unless it is clearly erroneous. After reviewing the record, we conclude that the district court's finding is supported by the evidence and hence not clearly erroneous.

There was testimony that the concrete anchors occasionally became detached from the buoys; that the detached anchors often were not retrieved, but instead left in the water; and that anchors sometimes were visible above the water line. Furthermore, pictures taken one year after the accident showed partially submerged abandoned anchors visible from shore. There was testimony that six months prior to the accident the water level was similarly low and that these anchors likely would also have been visible then. Upon this and other testimony, the district court concluded that the Corps knew or should have known of the hazard that caused Denham's injuries. We do not believe that conclusion to be clearly erroneous.

---

**1.** In a case involving somewhat similar facts, the Eighth Circuit held that under Arkansas's recreational use statute, the United States could be held liable to a swimmer who was paralyzed when he struck his head on a submerged rock in a swimming hole within a National Park. In light of the fact that the National Park Service was aware of the danger of submerged rocks, the court held that there was a question of material fact as to whether the action of a Park Service employee who recommended the swimming hole and failed to warn of the danger of submerged rocks constituted willful and wanton conduct. The court therefore reversed the trial court's summary judgment. *Mandel v. United States*, 719 F.2d 963 (8th Cir.1983).

 

In sum, the district court found that prior to Denham's accident Corps employees were aware, either actually or constructively, that some of the concrete anchors had become detached from their buoys and remained on the floor of the lake within the swimming area. The court further found that these abandoned anchors rendered the swimming area unreasonably dangerous and that it was easily foreseeable that somebody could be injured in the manner that Denham ultimately was. These findings are supported by the evidence. So too is the district court's conclusion that, in the light of these facts, the failure of the Corps to do anything about the abandoned anchors was grossly negligent. We affirm the imposition of liability against the United States for Denham's injuries.

### IV.

On cross-appeal, Denham challenges the district court's finding that his own negligence contributed 30% to his injuries. Contributory negligence determinations are factual findings that will not be overturned unless clearly erroneous. *Employers National Insurance Co. v. Chaddrick*, 826 F.2d 381, 385 (5th Cir.1987); *see also Flowers Transportation, Inc. v. M/V Peanut Hollinger*, 664 F.2d 112, 114 (5th Cir.1981). In this case, Denham has not convinced us that the fact-finder's determination was clearly erroneous.

The district court found that Denham was intoxicated at the time of his injury and that the waist-deep water into which he dove was murky. In these circumstances, the court concluded that Denham reasonably should have foreseen the potential for danger in his action. *See Trinity River Authority v. Williams*, 689 S.W.2d 883, 886 (Tex.1985) (contributory negligence finding supportable where one "ought reasonably to have foreseen that the event in question, or some similar event, would occur"). The district court's findings are supported by the evidence; its conclusion is not clearly erroneous.

Denham also complains that the damages found by the district court are inadequate. Like comparative fault, determination of damages is an issue of fact that will be overturned only if clearly erroneous. *Employers*, 826 F.2d at 386; *see also Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 632 (5th Cir.1983) (trial court's damage award not to be set aside "unless it is clearly inadequate"). The district court awarded pecuniary damages of $2,437,947.[2] Denham claims that the evidence showed pecuniary damages of $3,808,516. However, there was conflicting evidence presented on many of the elements of Denham's pecuniary damages claim. Although the district court did not itemize the components of its damage award, in light of the evidence presented we cannot say that its determination was clearly erroneous or its award inadequate.

### V.

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

**2.** The district court also awarded Denham $500,-000 for pain and suffering.