719 So.2d 1158 (1998)
Abel Jack HARDY, Jr., et al., Plaintiffs-Appellees,
v.
Brian Q. BOWIE, et al., Defendants-Appellants.
No. W97-1707.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
*1159 Patrick Craig Morrow, Sr., Esq., for Abel Jack Hardy, Jr., et al.
Carroll Spell, Jr., Esq., Lafayette, for Brian Q. Bowie, et al.
*1160 Edwin Gustav Preis, Jr., Esq., Kay Theunissen, Esq., Lafayette, for City of Lafayette.
John P. Guillory, Lafayette, for LA. Food & Entertainment.
Before SAUNDERS, DECUIR and SULLIVAN, JJ.
SAUNDERS, Judge.
The issue on appeal is whether a one-on-one duty arose between a police officer and a citizen such that the officer's general public duty was usurped by a special duty to that individual. Additionally, before this court is the issue of whether La.R.S. 9:2798.1 applies to render the City of Lafayette, as governmental actor through the Lafayette Police Department and its employees, immune from suit arising from a victim's murder.
This case comes before us on remand from the Louisiana Supreme Court wherein the City of Lafayette sought supervisory writs over a trial court's denial of an exception of no cause of action and/or motion for summary judgment, and our court's denial of writs from the same. Exception/Motion denied.

PROCEDURAL HISTORY
Christopher Scott Hardy died from injuries sustained by a gunshot wound on the night of August 22, 1993. The victim's surviving parents, Abel Jack Hardy, Jr. and Elizabeth Heriot, and brother, John Daniel Hardy, brought a civil suit for damages arising from the negligent acts and/or omissions of named defendants, to wit: Brian Q. Bowie, the City of Lafayette, Six Pocket, Inc., and Louisiana Food and Entertainment, Inc. On November 14, 1994, claims brought by John Daniel Hardy were dismissed pursuant to the successful Peremptory Exception to No Right of Action filed by Six Pocket, Inc. and Louisiana and Food Entertainment, Inc. On May 9, 1997, the City of Lafayette filed an Exception of No Cause of Action and/or Motion for Summary Judgment, which was denied on November 17, 1997. From this rule, City filed, on December 18, 1997, for Supervisory and/or Remedial Writ to this Court which was denied on February 2, 1998. City then filed for the same on March 4, 1998, to the Louisiana Supreme Court. On April 9, 1998, the Supreme Court granted the City of Lafayette's writ application and remanded to this Court for briefing, argument and opinion.

FACTS
On August 22, 1993, a fight erupted on McKinley Street in Lafayette, Louisiana in an area lined with bars called the "Strip." Decedent, Christopher Scott Hardy, was killed following an altercation with defendant, Brian Q. Bowie; Hardy died from a gunshot wound. The decedent's family alleges that the City of Lafayette, hereinafter "City," acting through the Lafayette City police, was negligent in breaching a one-to-one duty to protect Hardy. Plaintiffs argue that a one-to-one duty to Hardy, as opposed to the general public, arose when a warning shot was fired minutes before the fatal bullet hit its target. At the time of the shooting, the Lafayette Police Department had four officers in the area to assist in enforcing the bar closure laws; as was common, there were approximately four to five hundred people in the "Strip" area that night. In addition to the police officers, four off-duty sheriff's deputies were in the area to facilitate the same. Testimony indicates that a loud noise, possibly a gunshot, was sounded. On their way to investigate, the police officers stopped to investigate and break up a large fight involving approximately 30 white males and one black male. When two more shots were fired, the officers made their way to the area where the altercation at issue occurred; Hardy had been shot.
City seeks to dismiss plaintiffs' claims in an Exception of No Cause of Action and/or Motion for Summary Judgment arguing that City owed and breached no duty to plaintiffs, and alternatively, if a duty is found, City asserts its immunity from suit as a public entity under La.R.S. 9:2798.1.

LAW

I. Exception of No Cause of Action
Where an Exception of No Cause of Action is made, evidence may not be introduced by any party to support or controvert *1161 the objection. La.Code Civ.P. art. 931. The exception tests the legal sufficiency of a petition by determining whether the law provides a legal remedy to the factual allegations, taken as true, that arise on the face of the petition. Everything on Wheels Subaru, Inc. v. Subaru S., Inc., 616 So.2d 1234 (La. 1993). "When a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled." Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1162 (La.1988). In the present matter, plaintiffs' petition alleges several grounds of negligence on the part of City, through the Lafayette Police Department. City argues that since plaintiffs' petition fails to allege that a one-to-one duty arose between a police officer and the victim, plaintiffs have no cause of action. On the contrary, plaintiffs allege that City caused the victim's death due to an enumerated list of acts/omissions by City. This specific allegation assumes a one-to-one duty owed by the officers to the victim. Indeed, this Court finds that plaintiffs have stated a cause of action in negligence for which, if proven, the law provides a remedy.

II. Negligence and the Public Duty Doctrine
To determine liability in a negligence action, a court must undergo a duty/risk analysis wherein a plaintiff must prove each of the following elements:
(1) the conduct in question was the cause-in-fact of the resulting harm;
(2) the defendant owed a duty of care to plaintiff;
(3) the requisite duty was breached by the defendant;
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Stroik v. Ponseti, 96-2897 (La.9/9/97); 699 So.2d 1072, 1077.
"Each element of the duty/risk analysis is dispositive, in that, if any one element is not present, liability cannot result." Kniepp v. City of Shreveport, 609 So.2d 1163, 1168 (La.App. 2 Cir.1992). City argues in its Exception of No Cause of Action that plaintiffs have no legal remedy where City owed the victim no special "one-to-one" duty. Hence, the nature and extent of the officers' duty to Hardy must be determined as an initial matter.
The public duty doctrine, the wholesale, categorical rule that a governmental entity owes no duty to an individual where its undertakings are for the general public good, has been rejected by Stewart v. Schmieder, 386 So.2d 1351 (La.1980). Previously, the logical extension of the public duty doctrine was that, in as far as a governmental body was liable to all, it was liable to no individual. It is important to note, however, that Stewart has not been applied to find governmental liability every time its officials could have prevented injury, rather, "[t]he existence of a duty and the scope of liability resulting from a breach of that duty must be decided according to the facts and circumstances of the particular case." Fowler v. Roberts, 556 So.2d 1, 7 (La.1989). Hence, the duty owed by the police officers, as to the general public or as to the victim, must be ascertained from the facts and circumstances leading to the ultimate demise of Hardy.
It is well established that "the duty of members of the police department is essentially that of maintaining peace and order, preventing and detecting crime and enforcing the law." Barry v. Dennis, 633 So.2d 806, 809 (La.App. 3 Cir.1994). A "special duty" to an individual must be shown to bring an officer's duty outside the scope of a general public duty. Id. at 810. Hence, there are two exceptions to a police officer's general duty where a special duty arises: one, where a personal relationship arises (a one-to-one relationship) and two, where a statute or ordinance provides a duty to protect a class of individuals. Miller v. Bailey, 621 So.2d 1174, 1181 (La.App. 3 Cir.1993).
Where, as in the present matter, the record does not indicate a particular statute or ordinance under which the officers were acting, the relevant inquiry on review must focus on whether a one-to-one relationship arose between the officers and Hardy. This Court in Zeagler v. Town of Jena, 556 So.2d 978, 982 (La.App. 3 Cir.1990), used "closeness in proximity and time" to test whether a *1162 one-to-one relationship between an officer and a plaintiff exists. In Zeagler, the court found no such relationship where a husband, after seeking and being denied help from local officials, broke into a house and shot his wife. Id. In Reilly v. Town of Church Point, 96-2 (La.App. 3 Cir. 5/8/96); 673 So.2d 1348, this court noted that the determination of duty owed by a police officer "involves an assessment of the facts and circumstances surrounding the case." Id. at 1350.
In the case sub judice, a factual inquiry is necessary to determine whether the police officers established a personal relationship to Hardy, precluding immunity under this exception to the public duty doctrine, or whether their duty to the general public maintained. The record betrays inconsistent and conflicting testimony regarding facts pertinent to evaluating the "closeness and proximity in time" of the officers' actions relative to immediate events surrounding Hardy's death. Conflicting testimony found in the record material to the nature and extent of the officers' duty include, but is not limited to, the time lapse between the initial warning shot fired by Bowie and that of the fatal shots and whether the officers had sufficient information to reasonably understand that a gun had been fired. Absent further inquiry, the nature and scope of the officers' duty cannot be properly determined.
However, arguendo, were a duty, breach and cause in fact found, we address the La.R.S. 9:2798.1 immunity defense set forth by City.

III. Statutory Immunity
Appellant asserts that City, as a public entity, is statutorily immune from liability to this plaintiff. La.R.S. 9:2798.1(B) provides that "[liability shall not be imposed on public entities or officers or employees based upon the exercise or performance or the failure to exercise or perform their policy making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.]"
The immunity statute legislatively implements the separation of powers limitation on the coordinate branches as set forth by the Louisiana Constitution. Article II § 1 distributes the powers of government into three separate branches, particularly, the legislative, executive and judicial branches. La. Const. art. II § 1. The Louisiana Constitution further provides that "no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. art. II § 2. Section D of La.R.S 9:2798.1 explains that its purpose "is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana." La.R.S. 9:2798.1(B) provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Hence, the immunity inquiry must focus on whether the official conduct falls within the lawful policy making or discretionary powers and duties of the public entity.
In 1989, the Louisiana Supreme Court adopted the two prong test of Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to determine "whether the discretionary function exception applies in specific fact situations." Fowler v. Roberts, 556 So.2d 1, 15 (La.1989). Fowler reiterates the federal test which governs the application of La.R.S. 9:2798.1 and provides that the immunity exception is guided by two considerations:
First, the exception does not apply when a statute, regulation, or policy specifically prescribes a course of action, i.e., where there is no element of choice or discretion involved. Second, where discretion is involved, the exception confers immunity only where the discretionary action involves the permissible exercise of a policy judgment grounded in social, economic or public policy.
Id.
The first consideration contemplates that where an employee acts pursuant to a predetermined *1163 course of action, "the employee [has] no discretion or choice as to appropriate conduct" therefore the entity is not immune since it prescribes the conduct causing the harm. Fowler, 556 So.2d at 15. The second inquiry considers conduct that is discretionary, and as such independent, and grants immunity only if the discretion used by the employee is found to be guided by policy considerations. Simeon v. Doe, 618 So.2d 848 (La.1993).
Where there is no statute or regulation guiding the action at issue and the second prong of the Berkovitz test is invoked, another two-step analysis is appropriate. First, it must be considered whether the governmental action was taken as a matter of choice. This is a factual finding which is properly determined at trial. Williams v. City of Monroe, 27,065, 27,066 (La.App. 2 Cir. 7/3/95); 658 So.2d 820. Next, the action at issue must be distinguished as either discretionary policy-making, thereby invoking the statute immunity, or whether the action is purely operational in nature. Id. If the action is simply operational, La.R.S. 9:2798.1 grants no immunity to the entity. "[W]hether a public duty is policy-making rather than operational is a question of fact which precludes summary judgment." Jones v. New Orleans Aviation Board, 572 So.2d 1191, 1193 (La.App. 5 Cir.1990); see also Harris v. Godwin, 28,245 (La.App. 2 Cir.1996); 671 So.2d 1278. In Jones, the court found that the issue of whether the New Orleans Aviation Board fulfilled its duty to police/patrol an airport roadway and its decisions related thereto were purely discretionary or involved policy considerations was an issue of material fact and therefore precluded summary judgment. Id. at 1193. Applying the foregoing to the Berkovitz consideration, the record before us is insufficient in that it presents no evidence establishing or refuting that the decisions City made were discretionary, that is, made as a matter of choice. If we assume that they were, the next inquiry then must seek to determine the nature of that decision making as either policy-based or simply operational. The kind of decisions shielded by La.R.S. 9:2798.1 involve those "grounded in social, economic, or political activity." Williams, 658 So.2d at 828. In the absence of definition, we look to prior jurisprudence to guide us in distinguishing between policy decisions and those purely operational.
In Thibodeau v. Mayor and Councilmen of Morgan City, 619 So.2d 595 (La.App. 1 Cir. 1993), the court found a council decision to keep a recreation area open to be a policy decision covered under the statute, however, the court found the council decision regarding the language used to warn the public of dangers was an operational one falling outside of the statute's protection. In Chaney v. National Railroad Passenger Corporation, 583 So.2d 926 (La.App. 1 Cir.1991) the court deemed the City of Ponchatoula's decision operational when it chose not to place signs at an intersection. Of import to the present matter, the court in Chaney found that the distinction of a decision as policy-making or operational, and whether the discretion used was the kind protected by the statute, to be a factual question and as such inappropriate for a Summary Judgment ruling. Id. Immunity for discretionary functions by a government entity under Louisiana law is similar to that found in the Federal Tort Claims Act as discussed by the Fifth Circuit in Denham v. United States, 834 F.2d 518 (5th Cir.1987). In Denham, the federal court considered the scope of governmental immunity for discretionary functions under the F.T.C.A. and described the government as responsible for negligent acts once it undertakes to provide a service, that is, the F.T.C.A. provides discretionary immunity at the level of making the decision to provide a service, not at the level of implementing it. Id. at 520.
In the present matter, no evidence was set forth detailing how the decisions of City were made, who made them, and what considerations were involved in making them. The Fowler court explained that "[j]udicial review must operate to ensure that the administrative process itself will confine and control the exercise of discretion. Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible." Fowler, 556 So.2d at 16, citing Environmental Defense Fund v. Ruckelshaus, 439 F.2d 584, 598 (D.C.Cir. *1164 1971). While the foregoing discussion sets forth the factual inquiry appropriate to determine the applicability of La.R.S. 9:2798.1, no such determinations can be made by this court, as to do so would require us to delve into the merits which is beyond the purview of a reviewing court.

IV. Summary Judgment
For Summary Judgment to be appropriate, the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary Judgment is now a favored procedure in Louisiana and "once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain." Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, La.Code Civ.P. art. 966(C)(2).
Summary Judgments are subject to de novo review on appeal and the reviewing court must ask the same questions as a trial court: "whether there is a genuine issue of material fact ... and whether the party is entitled to judgment as a matter of law." Pendleton v. Barrett, 97-570 (La.App. 3 Cir. 12/23/97); 706 So.2d 498, 502. Since a reviewing court may not weigh conflicting evidence on a material fact, and where this court finds an insufficient record to dispose of this conflicting evidence, a trial on the merits is the only appropriate recourse. Quigley v. T.L. James and Co., Inc., 595 So.2d 1235 (La.App. 5 Cir.1992).
In addition to the material immunity issues, the factual inquiry required to determine the officers' duty, as mentioned earlier in this decision, readily combines to clearly preclude any summary ruling by this or the lower court.

DECREE
In light of the foregoing, this court finds a cause of action in negligence set forth in plaintiff's petition and affirms the lower court's denial of summary judgment. This case is remanded to the trial court for a trial on the merits. Appeal costs assessed to the City of Lafayette; costs of the lower court to be determined by the outcome of the trial on the merits.
AFFIRMED AND REMANDED.
SULLIVAN, J., dissents. I would grant the writ and grant the motion for summary judgment.