744 So.2d 606 (1999)
Abel Jack HARDY, Jr. et al.
v.
Brian Q. BOWIE, et al.
No. 98-CC-2821.
Supreme Court of Louisiana.
September 8, 1999.
*607 Edwin Gustav Preis, Jr., Laura K. Theunissen, Timothy Wayne Basden, Preis, Kraft & Roy, Lafayette, Counsel for Applicant.
Patrick Craig Morrow, Jr., James Steven Gates, Morrow, Morrow, Ryan & Bassett, Opelousas, John P. Guillory, Leonard & Leonard, Lafayette, Counsel for Respondent.
Brian Q. Bowie, Lafayette, pro se.
Gustave Alexander Fritchie, III, Wood Brown, III, New Orleans, Counsel for Coregis Ins. Co.
*608 VICTORY, J.[*]
At issue in this case is whether the public duty doctrine applies to insulate the City of Lafayette from liability where the Lafayette Police Department failed to prevent a fatal shooting. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal, which denied the City of Lafayette's motion for summary judgment, and, applying the traditional duty-risk analysis, hold that the police officers did not act negligently.

FACTS AND PROCEDURAL HISTORY
This case arises out the death of Christopher Scott Hardy, who was shot and killed during an altercation with defendant, Brian Bowie[1], in the McKinley Strip area in Lafayette on August 22, 1993.
The depositions submitted in support of the opposition to the instant motion established that the McKinley Strip area is an area known to be a popular college hangout near the University of Southwestern Louisiana. On any particular weekend the crowd at the Strip can number between 400 and 500 people. Because the area contains several bars that are required by law to close at 2:00 am, officers from the Lafayette Police Department are on duty to enforce bar closure, traffic control and DWI laws. On the night of the incident, four Lafayette Police Department officers were on duty. Four off-duty sheriff's deputies were also providing paid security in the area.
Officer Charles Steve Viccellio, who had been in law enforcement for about 13 years at the time of the incident, testified that on the night in question, as he and the other officers were assisting in moving the crowd out of the bars, there was a loud bang that sounded like a gun shot. Viccellio and his partner immediately headed across the street in search of the cause of the noise. As they walked across the street, people were telling the officers, "there's a black guy with a gun." When the two officers arrived in the open parking lot across the street from Pete's Bar, there was a group of approximately thirty young men beating a young black man. It took them approximately two minutes to break up the fight and to determine that the black man at the bottom of the pile was not in possession of a gun. Several people from the crowd then told the officers that the man with the gun was further into the parking lot. The officers then went further into the parking lot, and as they attempted to get through what is estimated to be several hundred people, they heard two more loud bangs that were later determined to be gun shots. Immediately after the shots were fired, one officer drew his gun and after Bowie attempted to escape by car, he was taken into custody. The testimony establishes that a person standing at the point where the fight occurred could not see the point where the fatal shooting occurred because cars and people were blocking the view.
What occurred while the officers were looking for the origin of the "loud bang" is explained by the testimony of witnesses Daniel Boudreaux, Jason Coleman, and Lance Adamson. According to Jason Coleman, Brian Bowie's friend, the black man involved in the fight was also his and Bowie's friend. While the 30 men were beating up their friend and others were advancing on him, Bowie pulled out his gun and fired a shot in the air. Coleman called this a "warning shot." After that shot, Bowie and Coleman retreated towards his car with Scott Hardy following them. Bowie got into his car and Hardy opened the car door, attempting to prevent them from leaving. The two men exchanged words and punches, and then Bowie, while seated in his car, fired two fatal shots at Hardy. Coleman, who was *609 seated in the passenger seat at the time of the shooting, estimated that only two to three minutes elapsed between the warning shot and the fatal shots. He stated that the fight at the car lasted between 30 seconds and one minute.
The other witnesses' accounts are almost identical. Lance Adamson testified to hearing a loud noise, and estimated that the time between the loud noise and the shots fired at Hardy was "more than a minute." Daniel Boudreaux testified that approximately one to five minutes elapsed from the time Bowie fired the warning shot to the time he first saw Hardy walking towards Bowie's car and then approximately two to three minutes elapsed until Bowie shot Hardy. The officer testified that "only a very few minutes" elapsed between the "loud bang" and the gun shots.
Plaintiffs filed the instant suit against several defendants, including the City of Lafayette (the "City") for damages arising out the death of their son. Plaintiffs' petition alleged various acts of negligence by the City in not preventing the altercation that ultimately led to his death. In response, the City filed an "Exception of No Cause of Action and/or Motion for Summary Judgment." The City argued it owed no duty to Hardy, and in the alternative, it argued no duty was breached. In support, the City attached affidavits from officers and fact witnesses, who indicated that the confrontation between Hardy and Bowie lasted less than a minute, and that no gun was visible until the shots were fired. Plaintiffs allege in opposition to the motion that since the officers admitted to hearing the warning shot, this gave rise to a duty to Hardy to identify, confront, disarm and arrest the armed individual (Bowie) with whom he was involved in a hostile confrontation. They claim that if the police had reacted to the warning shot earlier, they would have apprehended Bowie before he shot Hardy.
The trial court denied the City's Motion for No Cause of Action and/or Motion for Summary Judgment. The Third Circuit Court of Appeal denied writs on December 18, 1997. The City then filed a writ with this Court and we remanded the matter to the court of appeal for briefing, argument, and opinion. Hardy v. Bowie, 98-0546 (La.4/9/98), 717 So.2d 1136. On remand, the Third Circuit again affirmed the denial of the City's exception of no cause of action and/or motion for summary judgment. Hardy v. Bowie, 97-1707 (La.App. 3 Cir. 10/7/98), 719 So.2d 1158. We granted the City's writ. Hardy v. Bowie, 98-2821 (La.1/15/99), 735 So.2d 643.

DISCUSSION

Summary Judgment
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he *610 will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2).
Section 4 of Acts 1997, No. 483, which amended this article, declares that "all cases inconsistent with" Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41, are legislatively overruled. In Hayes v. Autin, the Third Circuit explained the effect of the 1996 amendment as follows:
The jurisprudential presumption against granting the summary judgment has been legislatively overruled by La.Code Civ. P. art. 966 as amended. In effect, the amendment "levels the playing field" between the parties in two ways: first, the supporting documentation submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed.
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to Art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Proc. 56(c),....
. . .
We therefore adopt the federal courts' more liberal standard for summary judgment. Provided that sufficient time for discovery has been allowed, we will assess the proof submitted by the parties in order to weed out meritless litigation, and to secure the just, speedy, and inexpensive determination of every action submitted for summary judgment.
685 So.2d at 694-95.
It is under this standard that we review this motion for summary judgment, which review is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). Thus, the City's motion will be granted unless we find that the plaintiffs have presented evidence of a material factual dispute. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751; Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Id.

The Public Duty Doctrine
The public duty doctrine has been defined as follows:
[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. "The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance."
Stewart v. Schmieder, 386 So.2d 1351 (La. 1980) (quoting Cooley on Torts, 4th Ed. Sec. 300 at page 385). Courts have previously *611 recognized two exceptions to the public duty doctrine: (1) where the statute or ordinance setting forth the duty indicates by its language that the duty is designed to protect a particular class of individuals; and (2) where the officer's general duty has been transformed into a duty owed to an individual through closeness or proximity in time.[2]Kendrick v. City of Lake Charles, 500 So.2d 866 (La. App. 1 Cir.1986).
In affirming the lower court's denial of the City's motion for summary judgment, the court of appeal formulated the issues in light of the public duty doctrine described above as follows:
The issue on appeal is whether a one-on-one duty arose between a police officer and a citizen such that the officer's general public duty was usurped by a special duty to that individual. Additionally, before this court is the issue of whether La. R.S. 9:2798.1 applies to render the City of Lafayette, as governmental actor through the Lafayette Police Department and its employees, immune from suit arising from a victim's murder.
The court of appeal held:
In the case sub judice, a factual inquiry is necessary to determine whether the police officers established a personal relationship to Hardy, ... or whether their duty to the general public maintained. The record betrays inconsistent and conflicting testimony regarding facts pertinent to evaluating the "closeness and proximity in time" of the officers' actions relative to immediate events surrounding Hardy's death. Conflicting testimony found in the record material to the nature and extent of the officers' duty include[s], but is not limited to, the time lapse between the initial warning shot fired by Bowie and that of the fatal shots and whether the officers had sufficient information to reasonably understand that a gun had been fired. Absent further inquiry, the nature and scope of the officers' duty cannot be properly determined.
*612 The court was correct in noting that a crucial issue was whether the police officers owed a duty to Hardy; however, its reliance on the public duty doctrine and its exceptions was misplaced. The public duty doctrine has never been adopted by this Court, and we have criticized and rejected it as a categorical rule. See Stewart v. Schmieder, supra and Fowler v. Roberts, 556 So.2d 1 (La.1989). In Stewart, we held that "under the jurisprudence of this state, the mere fact that a duty is of a public nature, and benefits the general public, does not require a conclusion that the city cannot be found liable for the breach of that duty." 386 So.2d at 1358. In Fowler, we held that the rejection of the public duty doctrine in Stewart did not mean that a governmental body will be liable any time a person's injury could have been prevented by a public official's proper performance of his duty. "The existence of a duty and the scope of liability resulting from a breach of that duty must be decided according to the facts and circumstances of the particular case." 556 So.2d at 7. Accordingly, cases involving allegations of liability on the part of police officers or other employees of public entities that have come before this Court have not resulted in an application of the public duty doctrine, but rather have involved the application of a duty-risk analysis to the facts of the particular case. See Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072; Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318; Berry v. State Through Dept. Of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412; Roberts v. Benoit, 605 So.2d 1032 (La.1991).
The legislature attempted to adopt the traditional public duty doctrine by statute in 1985. La. R.S. 9:2798.1[3] was originally introduced as House Bill No. 67 to define the "public duty doctrine exemption from liability for damages." See Original, Engrossed, Reengrossed, and Enrolled versions of House Bill No. 67. The original version of House Bill No. 67 read in part as follows:
§ 2798.1 Public duty doctrine
A. The legislature finds and states:
(1) That, unless there is express and specific language therein evincing a clear intent to protect, under penalty of tort liability, a specific class of individual persons, other than the public at large, from a specific set of certain individual risks of harm, laws imposing duties on public entities to perform governmental activities are intended to increase the common good of society as a whole and do not impose duties the breach of which constitutes an offense or quasi offense or otherwise creates liability or an obligation in favor of persons who are individually harmed thereby.
*613 When House Bill No. 67 reached the Senate Judiciary Committee, Senator Windhorst explained that the bill "provides for the public duty doctrine exemption from liability." However, the Senate made several significant amendments to the bill, including deleting the traditional public duty doctrine exemption, but adding the present exemption for public entities from liability for failure to exercise discretionary duties in the lawful scope of their employment, and adding a provision creating liability for public entities for criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant conduct. Thus, instead of a traditional public duty doctrine in Louisiana, the legislature adopted La. R.S. 9:2798.1, which exempts public entities from liability for their employees' discretionary or policy-making acts. See Industrial Risk Insurers v. New Orleans Public Service, Inc., 735 F.Supp. 200, 202, 206 (E.D.La.1990); Persilver v. Louisiana Dept. Of Transp., 592 So.2d 1344 (La.App. 1st Cir.1991); Winstead v. Ed's Live Catfish & Seafood, Inc., 554 So.2d 1237, 1242 (La.App. 1st Cir.1989), writ denied, 558 So.2d 570 (La.1990); Sunlake Apartment Residents v. Tonti Development Corp., 522 So.2d 1298, 1304 (La. App. 5th Cir.1988); Brown v. Red River Parish School Bd., 488 So.2d 1132, 1134 (La.App. 2d Cir.1986). "Under [the discretionary function] doctrine, governmental decisionmakers exercising discretionary functions are immune from suit, because the courts should not chill legislative discretion in policy formation by imposing tort liability for discretionary decision." Ferdinand F. Stone and Andrew Rinker, Jr., Governmental Liability for Negligent Inspections, 57 Tul. L.Rev. 328, 346 (1982).
However, where liability is based on a public entity's non-discretionary acts, liability will be judged under the traditional duty-risk analysis. Fowler v. Roberts, supra (holding on rehearing that La. R.S. 9:2798.1 did not apply to immunize the DPS for its negligence, and reinstating the original majority opinion, as supplemented by the plurality opinion). In Fowler, we applied the two-step test enunciated in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) for determining whether the discretionary function exception applies in specific fact situations. A court must first consider whether the government employee had an element of choice. "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. If the employee had no discretion or choice as to appropriate conduct, there is no immunity. When discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is one grounded in social, economic or political policy. If the action is not based on public policy, the government is liable for any negligence, because the exception insulates the government from liability only if the challenged action involves the permissible exercise of a policy judgment. Fowler v. Roberts, supra at 15.
In this case, the City has not articulated any social, economic or political policy considerations surrounding the police officers actions in handling the crowd at the McKinley Strip or in attempting to locate the person who fired the first shot that would implicate La.R.S. 9:2798.1. Thus, the City is not immune from liability under La. R.S. 9:2798.1 and we must analyze the police officers' conduct under the duty-risk analysis.
Under the duty-risk analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Berry v. State, Through Department of Health and *614 Human Resources, supra at 414. Whether a duty is owed is a question of law. Id. The inquiry is whether the plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his claim. Id.; Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 292 (La.1992). Governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. Id.; Fowler v. Roberts, supra at 7. The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question. Id. It is our role to determine whether there is any jurisprudential or statutory rule or policy reason why, under the facts and circumstances of this case, the state would owe a duty to plaintiff to compensate him for his injuries. Id.
Generally, a "police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action." Prattini v. Whorton, 326 So.2d 576 (La.App. 4th Cir. 1976); Justin v. City of New Orleans Through Morial, 499 So.2d 629, 631 (La. App. 4th Cir.1986), writ denied, 501 So.2d 232 (La.1987). "His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances." Id. Officers are held to choosing a course of action which is reasonable under the circumstances. Mathieu, supra at 325.
Considering all the facts and circumstances of this case, we conclude that the law enforcement officers had a duty to act reasonably to investigate a possible violation of the law and to protect citizens who may be harmed by the violation. When the officers heard what they thought was a gun shot, they had the affirmative duty to choose a reasonable course of action in investigating the shot and restoring peace and order. See Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, 1177; Mathieu, supra at 325. Having identified the duty owed by the officers, we now turn to a determination of whether that duty was breached.
For the following reasons, clearly, the officers were reasonably discharging their duty when Bowie fired the fatal shot. Here, the police officers had no direct contact with either Hardy or Bowie prior to the fatal shooting. After they heard the warning shot, they immediately went out to the parking lot to investigate. When they heard from the crowd that a black man had a gun, they proceeded to look for a black man and in the course of their search broke up a fight in which a black man was being beaten by a large group of men. From that location, which was in the vicinity of the area where Bowie fired the warning shot, they could not see Bowie or Bowie's car and very shortly thereafter, Bowie shot Hardy. The police officers had not identified Bowie as the individual who was alleged to have the gun and they had no information that Bowie was going to attempt to shoot anyone, particularly Hardy. Hardy was not involved in the fight with Bowie's friend and thus the warning shot was not directed at Hardy. Hardy had no interaction with Bowie until Hardy approached him, apparently to prevent him from leaving the scene so that the police could arrest him for firing the warning shot, and Hardy was shot within 30 seconds to one minute later. The police officers acted reasonably under the circumstances in the performance of their duties. Plaintiffs have presented no evidence demonstrating that material factual issues regarding the reasonableness of the police officers' actions are in dispute.

CONCLUSION
The traditional public duty doctrine and its exceptions are not the law of Louisiana. Rather, La. R.S. 9:2798.1 and the duty-risk analysis are used to determine whether public entities and their officers and employees are liable. Where, as here, the *615 police officers acted reasonably under the circumstances presented, the City is not liable.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed, the City's motion for summary judgment is granted, and the petition for damages against the City is dismissed. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] Bowie subsequently pled guilty to second degree murder as a result of the incident.
[2] See Shepard v. Bradford, 98-172 (La.App. 3 Cir. 11/4/98), 721 So.2d 1049 (granting summary judgment in favor of the City of DeRidder in a case involving the police department's alleged failure to prevent a fight at a public park where the police had no contact with the plaintiff prior to his attack) (Judge Thibodeaux dissented, noting that the public duty doctrine and its exceptions should not be applicable in Louisiana); Miller v. Bailey, 621 So.2d 1174 (La.App. 3 Cir.1993) (failure of Department of Public Safety to enforce a law against parking on highway shoulders did not give rise to liability to pedestrians killed as a result of failure); Ardoin v. City of Mamou, 96-54 (La.App. 3 Cir.11/20/96), 685 So.2d 294 (police had no duty to prevent husband from shooting wife, even though police were called to their home and convinced the husband to leave the home 24 hours prior to the incident, as the police had no reason to believe the husband would later return to shoot the wife); Townley v. City of Iowa, 97-493 (La.App. 3 Cir.10/29/97), 702 So.2d 323 (police officer had no duty to individual whom officer found unconscious outside of a bar and who, when the officer went inside, regained consciousness, left the scene and had a fatal car accident); Zeagler v. Town of Jena, 556 So.2d 978 (La.App. 3 Cir.1990) (husband's request, which was denied, that police officers accompany him to house where his wife was allegedly with another man did not create an individual relationship between the officer and the wife that required the police to protect the wife from harm); Smith v. City of Kenner, 428 So.2d 1171 (La.App. 5 Cir.1983) (police had no individual duty to victim of bar room shooting where police had earlier ejected the shooter from the bar at the owner's request); Lowe v. Patterson, 492 So.2d 110 (La.App. 1 Cir.1986) (finding no sufficient closeness to create a one-to-one relationship between police hired to patrol parking lot and individual who passed out in parking lot and was run over by car). But see Tompkins v. Kenner Police Dept., 402 So.2d 276 (La.App. 4 Cir. 1981) (police department's exception of no cause of action denied where police arrived at scene of motorcycle accident, were told by motorcycle driver to attend to his passenger who had been thrown several feet away, but failed to discover accident victim who was lying a few feet away and who later died); Kendrick, supra (City's exception of no cause of action denied where individual was arrested for drunk driving, taken into custody and found to have a .166% blood alcohol level, released 3 hours later and then had a fatal car accident).
[3] La. R.S. 9:2798.1 now provides:

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.