STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1156


KENNETH N. HAWKINS

VERSUS

UNUM LIFE INSURANCE COMPANY OF AMERICA


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-996309
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, J.
David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

REVERSED IN PART AND AFFIRMED IN PART.

Painter, J., dissents and assigns written reasons.


Richard E. McCormack
Kelly G. Juneau
Irwin, Fritchie, Urquhart, & Moore
400 Poydras St., Suite 2700
New Orleans, LA 70130-3280
(504) 310-2100
COUNSEL FOR DEFENDANT/APPELLEE:
    UNUM Life Insurance Company ofAmerica

Kenneth N. Hawkins
In Proper Person
P. O. Box 44472
Shreveport, LA 71134
(318)861-1573
COUNSEL FOR PLAINTIFF/APPELLANT:
    Kenneth N. Hawkins

**GREMILLION, Judge.**

This matter involves the timeliness of payments of the proceeds of two long-term disability policies. Plaintiff/appellant, Kenneth N. Hawkins, appeals a summary judgment granted in favor of defendant/appellee, UNUM Life Insurance Company of America. Hawkins also complains of the trial court's refusal to grant a motion for summary judgment of his own.

## FACTS

Hawkins maintained a law practice in Lafayette, Louisiana. His practice mainly consisted of litigation. On October 3, 1998, Hawkins was involved in an automobile accident. He experienced neck and lower back complaints for which he was treated by several physicians, including Dr. John Cobb, a Lafayette orthopedic surgeon, who initially treated Hawkins conservatively, including medications and physical therapy. The medical records, particularly those of the physical therapist, indicate that Hawkins continued to practice— or attempted to practice—law until closing his practice for good in May 1999.

Hawkins had purchased two long-term disability insurance policies from UNUM, both through the group created by the members of the Louisiana State Bar Association and offered by Gilsbar, Inc. The first policy was issued with an effective date of November 1, 1994, although Hawkins maintains the policy was purchased in 1988; for purposes of this appeal, the effective date of the policies is of no moment. This policies bears policy number RXN 1019, and will be referred to simply as the "'94 policy." The second policy (the '98 policy), bears an effective date of July 20, 1998, and is numbered RXN634480. Hawkins intiated claims against both policies.

UNUM requested an independent medical examination (IME) of Hawkins by Dr. Jack E. Hurst. Dr. Hurst opined that Hawkins suffered no objective deficits

and was not disabled. Later, though, a discogram performed on Hawkins demonstrated that he had a herniated disc at the C5-6 level. On November 2, 1999, Dr. Cobb performed a cervical fusion.

UNUM had Hawkins' medical records reviewed by Dr. Richard D. Corzatt. Dr. Corzatt opined that a typical patient would take three to six months to recover from a cervical fusion. He felt that Hawkins would probably be able to return to at least part-time law practice after that. If Hawkins' recovery lasted longer, UNUM should consider another IME and activity analysis. There is no indication that either of these courses was considered by UNUM.

Hawkins also underwent a lumbar fusion in July 2000.

Under the conditions of both policies, a claimant has thirty days from the date of disability to notify the company of a disability, and ninety days within which to provide proof of his claim. The '94 policy provides that "'disability' and 'disabled' mean that because of injury or sickness the insured cannot perform each of the material duties of his or her regular occupation." "'Partial disability' and 'partially disabled' mean that because of injury or sickness the insured, while unable to perform all the material duties of his or her regular occupation on a full-time basis, is: 1. performing at least one of the material duties of his or her regular occupation or another occupation on a part-time or full-time basis; and 2. earning at least 20% less per month than his or her indexed pre-disability earnings due to the same injury or sickness." The amount of a partial disability benefit is calculated by subtracting the insured's current income from his pre-disability monthly income, as determined by the insured's W-2 from the calendar year before the disability arose minus his current earnings, and dividing that number by his pre-disability income, then multiplying that number times the policy's monthly benefit amount.

The '98 policy does not provide for "partial disability," but rather for "residual disability," which is defined as "Your [the insured's] inability due to Injury or Sickness to perform:  1. one or more of the substantial and material duties of Your occupation; or 2.  the substantial and material duties of Your occupation for as much time as is normally required to perform them."   The policy also requires that a residually disabled insured must be receiving regular care from a licensed physician other than the insured.  A residual disability is not deemed to exist when the insured's income loss is less than 20%.  That loss is calculated by employing a formula that compares the insured's income over the twenty-four months immediately before the disability arose with his income for each month he is claiming residual disability.  If the resulting comparison shows that the insured's income decline is less than twenty percent, no residual disability benefits are owed; conversely, if the decline is greater than eighty percent, it is deemed to be 100 percent.

Both policies provide defined benefit amounts in the event of total disability.

Hawkins initiated his claim for benefits in August 1999.  He completed a claim form and forwarded same to Gilsbar.  He filed suit against UNUM on December 23, 1999, alleging that he received no benefits and asserting his entitlement to total disability benefits and double indemnity penalties and attorney fees for UNUM's failure to pay his disability benefits.  During the pendency of the litigation, UNUM made two payments to Hawkins:  $30,400.00 in total disability benefits for the period of January 31 through July 2, 2000; and $78,000.00 in total disability benefits for the dates of January 2, 2004 through March 2, 2006.  However, the letter by which this draft was sent to Hawkins' attorney indicated that this payment was for residual disability benefits at a rate of 100 percent for the period of October 5, 1998 through November 2, 1999.

The litigation proceeded at a snail's pace until UNUM filed a motion for summary judgment in March 2007. Hawkins, who had posed his own motion for summary judgment in 2000, which was denied, filed a motion to re-urge summary judgment in his favor. Both parties supported their motions with affidavits and other attachments. The motions were heard on February 14, 2011. The trial court granted summary judgment in favor of UNUM and denied Hawkins' motion. It is from this judgment that Hawkins appeals.

## ASSIGNMENTS OF ERROR

Hawkins assigns the following errors:

1. The trial court erred in denying his motion for summary judgment.

2. The trial court erred in not referring the matter to trial on the merits.

3. The trial court erred in granting UNUM's motion for summary judgment.

We will treat Hawkins' second and third assignments of error as a single assignment because we view the outcome of the second assignment of error as dependent upon the third. We will address these issues first.

## ANALYSIS

Courts of appeal review grants of summary judgment de novo, applying the same tests as do trial courts. *Schroeder v. Bd. of Sup'rs. of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce

4

factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So. 2d 606.

UNUM's motion for summary judgment asserted that Hawkins' claims should be dismissed because it had reasonable grounds to suspect that Hawkins was only residually or partially disabled, as defined in the two policies. This required comparing Hawkins' pre-disability income with his post-disability income. UNUM maintained that it sought Hawkins' 1999 federal income tax returns, but was not supplied with them until 2005. After it received Hawkins' tax returns, it promptly paid him the benefits due under the two policies. These facts were all asserted in the affidavit of Mr. Jeffrey Denault, UNUM's Assistant Vice President in its Benefits Operations division.

Hawkins, on the other hand, maintains that he sent UNUM his 1997 and 1998 income tax returns. He points out that the '94 policy provided that his benefits were to be based upon his tax returns for the calendar year preceding his disability, and the '98 policy benefits were derived from an analysis of the twenty-four months preceding disability. Accordingly, Hawkins maintains, delaying payment because he failed to promptly deliver his tax returns from 1999 was arbitrary and capricious, and violated La.R.S. 22:1821 because his 1999 tax returns were not germane to any determination of his benefits.

We find that a genuine issue of material fact does exist that precludes summary judgment. If, as UNUM claims, it needed Hawkins' 1999 tax returns before it could analyze his claim, why did it make the 2000 payment to him for total disability for the period of January 31 through July 2, 2000? This payment was made at least four years before Hawkins supplied UNUM with his 1999 return. Another troubling issue is raised by the 2000 payment: Dr. Corzatt told UNUM

5

that Hawkins would be disabled for three to six months after his surgery. This payment was made for a period beginning almost two months after Hawkins' cervical surgery, and ending before Hawkins had his lumbar fusion surgery. We find no record that Hawkins received any benefits for the period of disability that UNUM's own medical examiner stated he could be expected to suffer after a fusion surgery. The record only reflects that Hawkins was paid benefits for October 5, 1998, through November 2, 1999, and for January 31 through July 2, 2000. No payments are reflected for the rest of November 1999 through January 31, 2000, nor for the disability period that Dr. Corzatt predicted would accompany the lumbar fusion surgery in July 2000.

There is no question that Hawkins was or is due benefits under these two policies. UNUM paid them. The question is whether they were paid timely and completely. These questions of material fact are not answered by UNUM's submissions, and summary judgment was not appropriate.

The questions of material fact that preclude summary judgment in favor of UNUM also preclude Hawkins' motion for summary judgment. Accordingly, Hawkins' first assignment of error is without merit.

## CONCLUSION

There exist genuine issues of material fact concerning the timing of the payments by UNUM to Hawkins and whether he is still owed additional payments. There is also an issue of material fact regarding UNUM's potential liability for penalties and attorney fees and this issue is dependent upon the resolution of the former questions. The summary judgment in favor of UNUM Life Insurance Company of America is reversed. All costs of these proceedings are taxed to defendant/appellee, UNUM Life Insurance Company of America.

**REVERSED IN PART AND AFFIRMED IN PART.**

NUMBER 11-1156

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


KENNENTH N. HAWKINS

VERSUS

UNUM LIFE INSURANCE COMPANY OF AMERICA


PAINTER, J., dissenting.

I would affirm the trial court's grant of summary judgment in favor of UNUM Life Insurance Company of America, finding that UNUM timely paid Hawkins under the long-term disability policies once it received satisfactory proof of loss. The record is clear that UNUM requested income information from Hawkins on April 14, 2000, and June 19, 2000, but the information was not received until April 12, 2005. The claim was paid in full on May 11, 2005, within the statutory period. Thus, summary judgment was appropriate pursuant to La.Code Civ.P. art. 966.