LSUSAN M. CHEHARDY, Judge.
Third-party plaintiff, Julian Graham Dodge, Inc., appeals the partial summary judgment dismissing one of its claims for damages against third-party defendant, Chrysler Corporation. For the following reasons, we affirm.
In the summer of 1996, M. Julian Graham, Jr.(“Graham”)[1] and Michael W. Murphy(“Murphy”)[2] sought to sell the assets of Julian Graham Dodge, Inc.(“JGD”), which owned and operated a Metairie Dodge dealership under a dealer agreement with Chrysler Corporation(“Chrysler”).[3] It is undisputed that Graham and Murphy identified two potential purchasers: Troy M. Duhon(“Duhon”), who was Vice President, director and minority shareholder[4] of JGD from July 1992 through December 18, 1996 and Ronald Lamarque(“Lamarque”).
In October of 1996, Lamarque entered into an Agreement to Purchase certain assets of JGD in Metairie, subject to approval from Chrysler. With knowledge of negotiations between JGD and both Lam-arque and Duhon, Chrysler |4approved Lamarque to succeed as Chrysler’s Dodge dealer in Metairie. On or about December 10, 1996, JGD sold substantially all of its assets to Lamarque Dodge, Inc.(“LDI”).
On June 27, 1997, LDI filed a Petition on Open Account and/or for Recovery of Money Owed and/or for Unjust Enrichment naming JGD, Graham, Murphy, and Duhon as defendants.[5] On August 20, 1997, JGD answered, reconvened, and filed a third-party demand.
In its third-party demand, JGD named Chrysler as third-party defendant and alleged that “Chrysler,” through its employee, A1 Stevens, “intentionally ‘leaked’ confidential information regarding [the JGD/Lamarque] negotiations to one of the potential buyers of [JGD]’s assets, which ultimately cost [JGD] approximately $500,000 on the sale of its assets.” JGD further stated that “Chrysler is liable unto [JGD] for the amount of profit lost on the sale of the assets of the corporation due to the wrongful acts of Mr. A1 Stevens.”
*576 On July 3, 2003, Chrysler filed a motion for partial summary judgment on JGD’s “Stevens-related” claim, to which it attached Chrysler’s answers and supplemental answers to JGD’s interrogatories; excerpts from Alfred S. Stevens, Jr.’s deposition; and excerpts and exhibit from Duhon’s deposition including the Board of Directors’ Resolution dated November 13, 1996 evidencing Unanimous Written Consent to the sale of all of JGD’s assets to Lamarque. Chrysler asserted that there was no genuine issue of material fact because JGD could not prove that there had been a disclosure of information to Du-hon, who was the only other potential buyer, from its employee, A1 Stevens. Further, even if there had been a disclosure, the disclosure would not have been wrongful since Duhon, as Vice | ^President, director, and minority shareholder of JGD, was entitled to know information about the prospective sale of the company or its assets.
In his deposition, Duhon stated that he was Vice-President, director and minority shareholder of JGD from 1992 until December 18, 1996. He stated that he heard rumors in July or August of 1996 that Graham and Murphy were interested in selling JGD. He approached Graham about buying the remaining 75% of the dealership. He stated that he and Graham went to lunch then had another meeting with their attorneys to discuss the purchase.
Duhon stated that he did not submit a concrete verbal offer or a written offer but that he was in negotiations with Graham about the dealership in September of 1996. Duhon stated that he “shied away” from the deal when he learned the price that Graham sought.
Duhon admitted that he spoke with Chrysler employee, A1 Stevens, two to three times a week at that time because they were “social friends and business acquaintances.” Duhon “guaranteed” that he did not remember A1 Stevens’ mentioning or discussing with him the particulars of Lamarque’s offer. He also stated that his decision not to purchase JGD’s assets did not have anything to do with any conversation that he had with A1 Stevens. Duhon admitted that he was aware that Lamarque was also in negotiations to purchase JGD and had, in fact, spoken with Graham about Lamarque’s “buy-sell” offer but denied knowing details of the offer.
According to his deposition, A1 Stevens worked as the Dealer Placement Manager for the New Orleans Zone office of Chrysler Corporation from 1994 until July of 1997. His job was to “coordinate dealer package agreements for ... incoming new dealers, existing dealers, making changes to their current agreement” with Chrysler. For the New Orleans Zone, Stevens would handle | fiChrysIer’s dealership transfers as well as applying for and opening new Chrysler dealerships.
In September of 1996, Stevens stated that he sent a letter to Murphy to convey Chrysler’s concerns about “growing pains” that JGD was experiencing at a couple of their stores, specifically the Dodge dealership. Within a few days, Murphy called Stevens to report that he had “agreed in concept to sell the store, along with selling a couple other stores he had” to Lam-arque.
Stevens admitted that he was in contact with Duhon during this time period but denied discussing with Duhon any of his conversations with Murphy. Stevens knew that he discussed the details of the JGD/Lamarque deal with Murphy “because I remember very specifically hoping to bring Mr. Lamarque to Mr. Murphy, and we had a great deal of discussion about the numbers but never any discussion of numbers that [Murphy] was discussing with [Duhon].”
*577 Stevens went on to state, “In fact, there was never any inference that they were trying to do a deal with [Duhon]. In fact, what was represented to me was they were buying [Duhon] out and [Duhon] was going off to do an import deal.” Stevens further reported that Duhon reported to him that Duhon had learned the details of the Lamarque offer from Graham and his attorney during a lunch meeting. Stevens also stated that, in their only discussion about this deal, Stevens “reiterated to Mr. Duhon ... it was a done deal; that Mr. Murphy and Mr. Lamarque had reached an agreement.”
JGD opposed the motion, averring that there were issues of fact regarding whether Stevens discussed JGD and Lamarque’s buy/sell agreement with Duhon; whether Stevens did not know of Duhon’s discussions with Graham about purchasing JGD; whether Duhon was still a Vice-President, director and minority shareholder of JGD at the time of the sale of assets to Lam-arque; and whether Duhon’s decision not to purchase JGD “had nothing to do with discussions with 17Stevens.” In support of their opposition, JGD attached affidavits from Murphy and John McFarland, who was Secretary of JGD from 1989 until the assets were sold to Lamarque.
In his affidavit, Murphy attested that he was Chairman of the Board from 1989 until the assets were sold to Lamarque. He attested that during negotiations with Graham, Duhon agreed to purchase the assets of JGD and assume all charge-backs from financial institutions that purchased retail installment contracts from Graham. He further stated that, to his personal knowledge, Lamarque offered to purchase the assets for a similar price but refused to assume the charge-backs. According to Murphy, the difference between the two figures was in excess of $500,000.00.
He also attested that, on the day that Graham was to sign the purchase contract with Duhon, Graham learned from Du-hon’s lawyer that Duhon would not agree to the deal. Murphy stated that Stevens “breached [their] confidential conversation” and told Duhon the specifics of Lam-arque’s buy/sell offer.
In his affidavit, John McFarland, who was Secretary of JGD at the time, stated that during negotiations with Graham, Du-hon agreed to purchase the assets of JGD and assume all charge-backs from financial institutions that purchased retail installment contracts from Graham. He further stated that, to his personal knowledge, Lamarque offered to purchase the assets for a similar price but refused to assume the charge-backs. According to McFarland, the difference between the two figures was in excess of $500,000.00.
He also attested that, on the day that Graham was to sign the purchase contract with Duhon, Graham learned from Du-hon’s lawyer that Duhon would not agree to the deal. McFarland stated that Stevens “breached [their] confidential conversation” and told Duhon the specifics of Lamarque’s buy/sell offer. McFarland also stated that on or after, July 1, 1996, Duhon was no longer | ^employed by JDG, was required by the Shareholder’s Agreement to “put” his stock in JGD, and not permitted to review confidential information of JGD after that date.
On November 10, 2003, Chrysler filed a Reply to JGD’s opposition with an attached excerpt of Duhon’s deposition and a copy of the Corporate Stock Buy/Sell Agreement of JGD executed by Duhon in 1994. In its reply, Chrysler argued that the evidence submitted by JGD cannot defeat summary judgment because the affidavits are not based on the personal knowledge of the affiants. Further, Chrysler argues that JGD failed to offer *578 sufficient evidence to defeat summary judgment on the basis that any disclosure to Duhon was not confidential since Duhon remained a minority shareholder and director of JGD until December 18, 1996, at least eight days after JGD’s assets were purchased by Lamarque.
On November 13, 2003, JGD supplemented their opposition to contend that “substantial circumstantial evidence exists tending to prove the disclosure by Stevens.” JGD argued that the circumstantial evidence was the fact that, in his deposition, Duhon admitted that Chrysler awarded him a Dodge franchise in New Orleans East at “no cost.” The trial judge heard and granted Chrysler’s motion for partial summary judgment on the disclosure issue on November 14, 2003.
On November 21, 2003, Chrysler moved to supplement the record of its motion for partial summary judgment with an affidavit from Nancy Davis to contravene assertions made in JGD’s supplemental opposition that Duhon received a Dodge franchise “for free” in exchange for favorable testimony on this case. Nancy Davis attested that she is the present Dealer Placement Manager of the Southeast Business Center for Chrysler. She was employed as the Dealer Placement Manager for the New Orleans Zone from January 2000 through May 2001. Davis attested that “Chrysler never asks for, nor does it receive, any fees or other monetary consideration for awarding a prospective dealer an open point for a | anew dealership.” Davis further attested that the award was not connected to a favorable outcome in this litigation. JGD opposed Chrysler’s Motion to Supplement the Record.
On November 25, 2003, the trial judge signed a written judgment granting summary judgment and dismissing JGD’s claim for purported disclosure of confidential information. The trial judge designated the judgment as final.
JGD filed a Motion for New Trial, which Chrysler opposed. On January 23, 2004, the trial judge heard and denied the motion. On January 29, 2004, the trial judge signed written judgments denying the Motion for New Trial and Granting Chrysler leave to supplement the record with Nancy Davis’ affidavit. This appeal follows.
On appeal, JGD asserts that the trial judge erred in granting Chrysler’s motion for partial summary judgment for three reasons: first, “Chrysler failed to carry its burden;” second, “the trial court improperly made credibility determinations;” and third, “Murphy and McFarland’s affidavits are not hearsay.” With regard to carrying its summary judgment burden, JGD specifically argues that Chrysler’s claim that there was no disclosure misrepresents the testimony because Duhon did not state that there was no disclosure but that he did not remember Stevens telling him of the disclosure. JGD submits that detail is a disputed fact that precludes summary judgment. Next, JGD argues that circumstantial evidence that Duhon received a Dodge dealership “at no cost” was sufficient to defeat summary judgment. JGD also contends that Chrysler’s alternative theory for summary judgment, which is any disclosure to Duhon was not wrongful because he, as an officer, director, and shareholder, had a right to know about the prospective sale of the company or its assets, is flawed.
JGD next argues that, in order to grant summary judgment in this case, the trial court had to “accept Stevens and Duhon’s dubious testimony as true — the | inveracity of which has been directly attached[sic] by the affidavits of McFarland and Murphy” and, thus, improperly made credibility determinations. Finally, JGD argues that Murphy and McFarland’s affidavits are *579 not hearsay under La. C.E. art. 801 because they contain statements by Duhon’s attorney offered against Duhon.
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. La. C.C.P. art. 966(C)(2). If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hutchinson v. Knights of Columbus, Council No. 571*7, 03-1533, (La.2/20/04), 866 So.2d 228; Hardy v. Bowie, 98-2821, pp. 4-5 (La.9/8/99), 744 So.2d 606, 609-610.
Summary judgments are reviewed de novo on appeal. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Id.
In Smith, the supreme court recognized that a “genuine issue” is a “triable issue.” Id. “An issue is genuine if reasonable persons could disagree. If on the Instate of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.” Id. Facts are material when their existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Id at 751. See also La. C.C.P. art. 966(B). When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967.
The movant, Chrysler, has the burden of proof. La. C.C.P. art. 966(C)(2). However, because Chrysler will not bear the burden of proof at trial, it is not required to negate all essential elements of JGD’s action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to JGD’s claim. If Chrysler meets this initial burden of proof, the burden shifts to JGD to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden at trial. If JGD fails to meet this burden, there is no genuine issue of material fact, and Chrysler is entitled to summary judgment.
In this case, JGD claims that Chrysler is liable to JGD for “wrongful disclosure of confidential information” by its employee, A1 Stevens. Because Chrysler will not bear the burden of proof at trial, it is not required to negate all essential elements of JGD’s action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to JGD’s claim.
After reviewing all of the documents presented in support of Chrysler’s motion for partial summary judgment, we find an absence of factual support for an essential element of JGD’s claim, namely, that there was a disclosure by Chrysler’s employee. *580 JGD’s contention that Duhon’s testimony, which was that he did not remember Stevens discussing other offers that JGD had received, precludes summary judgment is unpersuasive.
| ^Duhon testified that the only people with whom he discussed the Lam-arque/JGD offer were his attorney and Graham. Duhon stated that his decision not to purchase JGD was not influenced by any conversation he had with Stevens. Further, Stevens stated that he did not discuss details of the Lamarque/JGD deal with Duhon but only informed Duhon that it was a “done deal.” We conclude that Chrysler met its burden of proof with respect to summary judgment.
Under the law, the burden then shifts to JGD to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden at trial. In its opposition, JGD presented two affidavits that are substantially similar in their assertions. McFarland and Murphy both attest that, during negotiations with Graham, Duhon agreed to purchase the assets of JGD and assume all charge-backs from financial institutions that purchased retail installment contracts from Graham. They state that Lamarque offered to purchase the assets for a similar price but refused to assume the charge-backs. According to both affiants, the difference between the two figures was in excess of $500,000.00.
They also attested that, on the day that Graham was to sign the purchase contract with Duhon, Graham learned from Du-hon’s lawyer that Duhon would not agree to the deal. Both stated that Stevens “breached [their] confidential conversation” and told Duhon the specifics of Lam-arque’s buy/sell offer.
We are again unpersuaded by JGD’s contention that the affidavits are not hearsay because the information is an admission against interest by a party. La. C.C.P. Art. 967(A), in pertinent part, provides, “Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.”
11gFirst, although the affiants state that the information was based on their personal knowledge, the affidavits do not meet these criteria. Neither affiant exhibits personal knowledge of a disclosure by Stevens to Duhon. Both state that Graham learned from Duhon’s attorney that Duhon was canceling the deal because Duhon learned the details of the Lamarque offer. JGD argues that alleged information from Duhon’s attorney represents an admission against interest, which could be an exception to the hearsay rule. Even if Duhon was a party to the third-party demand, the alleged statement from Duhon’s attorney must be reported by someone who had personal knowledge of that statement. Neither affiant claims knowledge of the statement; in fact, both state that Duhon’s attorney told Graham of the alleged disclosure. We conclude, as the trial judge did, that the affidavits, which are not based on personal knowledge, do not produce factual support sufficient to establish that JGD will be able to satisfy its evidentiary burden at trial.
JGD also supplemented its opposition with an unsupported statement that “substantial circumstantial evidence exists tending to prove the disclosure by Stevens.” JGD argued that Chrysler awarded Duhon a Dodge franchise in New Orleans East at “no cost” in exchange for favorable testimony in this litigation, which tends to prove that Stevens disclosed confidential information to Duhon. Chrysler supplemented its motion for partial summary judgment with an affidavit from *581 Nancy Davis to contravene JGD’s assertions. Nancy Davis, who was Dealer Placement Manager for Chrysler’s New Orleans Zone when Duhon was awarded the new dealership in New Orleans East, testified that, “Chrysler never asks for, nor does it receive, any fees or other monetary consideration for awarding a prospective dealer an open point for a new dealership.” We again conclude that JGD has failed to produce factual support sufficient to establish that JGD will be able to satisfy its evidentiary burden at trial. Accordingly, we find no genuine hfissue of material fact on the issue of alleged wrongful disclosure of confidential information so Chrysler was entitled to summary judgment.
Finally, because we found an absence of factual support for JGD’s contention that a disclosure occurred and found summary judgment was properly granted on Chrysler’s first theory, we decline to reach the merits of JGD’s arguments on Chrysler’s alternative theory of summary judgment. In conclusion, we affirm the trial court’s judgment. Costs of this appeal are to be paid by appellant, JGD.

AFFIRMED.

. Graham was President of Julian Graham Dodge, Inc.("JGD”) and held 37.5% of its stock.

. Murphy was Chairman of the Board of JGD and held 37.5% of its stock.

. Chrysler Corporation, an automobile manufacturer that sells and distributes new Chrysler, Jeep and Dodge automobiles through independent, privately-owned dealerships, is now known as DaimlerChrysler Motors Company, LLC.

. In 1996, Duhon held 25% of JGD’s stock.

. LDI alleged defendants owed $760,821.27 with interest in reimbursements for funds received by JGD but owed to LDI for various transactions, including car sales, credit card payments, dealer statement credits, repair and manufacturer charge backs, and a stolen vehicle.