NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-1200


BILLIE SAM

VERSUS

STATE OF LOUISIANA, DEPT. OF TRANSPORTATION &
DEVELOPMENT


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 116595
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and John E. Conery,
Judges.


AFFIRMED.

**Carol Stookey Hunter**
**Assistant Attorney General**
**556 Jefferson Street, 4th Floor**
**Lafayette, Louisiana 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State of Louisiana, Department of Transportation & Development**

**John Martin Jefcoat**
**Galloway & Jefcoat**
**Post Office Box 61550**
**Lafayette, Louisiana 70596-1550**
**(337) 984-8020**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Billie Sam**

**CONERY, Judge.**

Plaintiff, Billie Sam (Sam), filed suit on January 14, 2010, against the State of Louisiana through the Department of Transportation and Development (DOTD) to recover damages and injuries sustained when her vehicle was crossing the Morbihan Bridge on Highway 344 in the Parish of Iberia and hit two steel "struts" near the right side of the bridge.[1]  Following a hearing, the trial court granted summary judgment in favor of DOTD, thereby dismissing Sam's petition with prejudice, finding Sam would be unable to sustain her burden of proof on the issue of notice. Sam appeals arguing the trial court erred in finding that DOTD did not have the necessary "notice" of the defect. She claims she would be able to sustain her burden of proof at trial.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2009, at approximately 6:30 A.M., while it was still dark, Sam was on her way to work at Willow Wood Park in New Iberia from her home in St. Martinville. In order to reach her place of employment, Sam was required to cross the Morbihan Bridge, an off-center swing bridge which transverses the Bayou Teche near New Iberia, Louisiana.   The bridge has a concrete entrance, but the center portion is covered with steel grid decking which pivots to allow marine traffic to pass.

The Morbihan Bridge is an on-call bridge.  The procedure for opening the bridge requires the vessel seeking passage on the Bayou Teche to contact DOTD, who sends an on call tender/operator to open the bridge to marine traffic. In addition to opening and closing the bridge, the tender/operators are required to

---

[1] Sam originally filed suit in St. Martin Parish.  DOTD filed Declinatory Exceptions of Insufficiency of Citation and Service of Process and Improper Venue.  Plaintiff responded with a Motion and Order to Transfer Venue and Incorporated Memorandum, which was granted by the trial court on April 12, 2010, transferring venue to Iberia Parish.

perform bridge maintenance, including lubricating and cleaning the bridge, as well as sweeping the roadway and maintaining the bridge houses.

Sam alleged she was traversing the steel grid decking portion of the bridge and was nearing the end of the bridge when she encountered two "bumps," which caused her car to shut off. She claims that the front end of her vehicle was damaged, the passenger side tire was flattened, air was lost from the driver's side tire, and the power steering fluid began to leak. Sam described the objects which allegedly caused the damage to her vehicle as "steeps," iron and wood structures approximately two and one half feet wide near the right side of the bridge. After the incident, Sam claims she was in shock and later that night began to experience pain in her neck and back for which she claims damages for physical pain and suffering. She also claims property damage for her vehicle.

On February 14, 2012, DOTD filed a Motion for Summary Judgment which was fixed for hearing on March 21, 2012. The hearing was held as scheduled on March 21, 2012, and the trial court took the matter under advisement. The trial court's written Reasons for Judgment in favor of DOTD were signed on April 27, 2012. On June 13, 2012 a Judgment reflecting the trial court's written reasons and dismissing Sam's petition with prejudice was signed by the trial court.

Sam urges that the trial court erred in granting summary judgment in favor of DOTD. The trial court held that Sam would be unable to meet her burden of proof at trial to establish that DOTD had actual or constructive notice of the possible defect in the steel grating of the bridge and failed to take the necessary corrective measures within a reasonable time, a key element necessary to sustain Sam's burden of proof.

## DISCUSSION

### *Summary Judgment Issue*

Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by the law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).[2]

In 1997, the legislature enacted La.Code Civ. art. 966(C)(2) which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747,* 03–1533, p. 6 (La. 2/20/04), 866 So.2d 228, 233; *Hardy v. Bowie,* 98–2821, (La. 9/8/99), 744 So.2d 606.

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art.

---

[2] La.Code Civ.P.art.966(B) was amended in 2012 to delete "on file." However as this case was filed prior to the amendment the former version is applicable.

967(B). A fact is material when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith,* 639 So.2d at 751 (citations omitted) (alteration in original). In other words, a "material" fact is one that would matter on the trial on the merits. "Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Id.*

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.,* 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427.

In order to prove liability on the part of DOTD under a theory of negligence pursuant to La.Civ.Code art. 2315, or based on strict liability, pursuant to La.Civ.Code art. 2317, or pursuant to La.R.S. 9:2800, which is applicable to public entities, a plaintiff must establish the following: (1) DOTD has custody of the thing which caused the plaintiff's injuries or damages; (2) the thing was defective because it had a condition which created an unreasonable risk of harm; (3) **DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time**; and (4) the defect was a cause-in-fact of plaintiff's injuries and damages. *Netecke v. State ex. rel. DOTD,* 98-1182, 98-1197, (La. 10/19/99), 747 So.2d 489.

***Actual Or Constructive Notice Of The Defect/Failure To Take Corrective Measures Within A Reasonable Time***

At the hearing held on March 21, 2012, DOTD submitted into evidence the Affidavit of Murphy J. Ledoux, Jr. (Ledoux), the Assistant District Administrator

for Operations for DOTD. Ledoux oversees the maintenance of state highways in his district, including the Morbihan Bridge on Louisiana Highway 344. In his affidavit, Ledoux testified he reviewed the DOTD records for the period beginning June 22, 2008, and continuing through June 23, 2009. His review revealed DOTD had no prior notice of any loose grating on the Morbihan Bridge at the location of Sam's incident prior to the morning of January 22, 2009, at approximately 7:30 a.m.

Attached as exhibits to Ledoux's affidavit were four documents dated January 22, 2009 or January 23, 2009, each entitled "DOTD/ORM [Office of Risk Management] Report Of Road Hazard Incident." The four documents memorializing the January 22, 2009 incidents were recorded by Merline Coleman, Administrator Co-Coordinator 3, and reflect the following:

The DOTD/ORM received a telephone call from Sam at approximately 7:30 a.m. on January 22, 2009, informing it that at 6:35 a.m. she hit a piece of "grading" while crossing the Morbihan Bridge "causing the front and rear tires on the passenger side to blow." Additionally the front driver's side tire lost all air and there was damage to the rim of the vehicle.

The DOTD/ORM received a telephone call from Matthew Landry at 7:40 a.m. on January 22, 2009, informing it that while traveling towards Louisiana Highway 86 he hit a piece of "grading" on the Morbihan Bridge at about 6:15 a.m.

The DOTD/ORM received a telephone call from Lindy Judice at 7:45 a.m., advising it that at 6:40 a.m., while traveling toward Louisiana Highway 86, she hit a piece of "grading" on the Morbihan Bridge, which "busted" her front passenger tire and caused damage to the rim.

5

The DOTD/ORM received a telephone call from Donald Gachassin on January 23, 2009, stating his wife hit an iron plate sticking up on the Morbihan Bridge the previous day at approximately 6:30 a.m., causing a cut in one of the tires of her 2006 H-3 Hummer.

The affidavit of Ledoux and the four attached documents, including the report made to DOTD by Sam on the morning of January 22, 2009, support DOTD's contention that: (1) In the early morning hours of January 22, 2009, DOTD had no knowledge or notice that there was loose grating on the Morbihan Bridge; and (2) DOTD had no notice or knowledge there was loose grating on the Morbihan Bridge at any time from the period beginning June 22, 2008, until it received the four telephone calls beginning at 7:30 a.m. on January 22, 2009, one of which was from Sam, reporting the damage caused by the loose grating on the Morbihan Bridge.

DOTD also submitted the affidavit of Kevin Leleux, (Leleux) who is currently DOTD's Bridge Inspection, Maintenance and Operations Supervisor for District 3, which includes Iberia Parish and the Morbihan Bridge spanning the Bayou Teche. Leleux confirmed that the Morbihan Bridge was under the custody and control of DOTD on January 22, 2009. He attested the Morbihan Bridge is an on-call bridge, which is not manned at all times, but only when there is a need to open the swing bridge to allow marine traffic to pass. The marine traffic contacts DOTD, and the bridge operators respond and open the bridge and then continue to follow the marine traffic along the bayou to open other swing bridges to allow passage along the Bayou Teche.

The record reflects that the Morbihan Bridge had been opened for the passage of marine traffic on January 20, 2009, two days prior to the incident on

January 22, 2009. Sam testified in her deposition that, prior to January 22, 2009, she had never experienced any problems with the grating on the Morbihan Bridge and had in fact crossed the Morbihan Bridge without any problems on January 21, 2009, the day before the incident.

The affidavits submitted on behalf of DOTD, as well as the supporting documentation of the three other reports of incidents occurring on the Morbihan Bridge at approximately the same time as Sam's incident, together with Sam's own testimony, clearly support the trial court's ruling that DOTD did not have either actual or constructive notice, much less any time to take corrective measures to repair the bridge prior to Sam's incident occurring on January 22, 2009 at 6:35 a.m.

As DOTD had made a prima facie showing that its motion should be granted, the burden then shifted to Sam pursuant to La.Code Civ.P. art. 966(C)(2), to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson,* 866 So.2d at 233.

Louisiana Code of Civil Procedure Article 967(B) states:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

The trial court in its written reasons cited *Babin v. Winn-Dixie*, 00-0078, (La. 6/30/00), 764 So.2d 37, for the proposition that the customer failed to show that the store had constructive notice of toothpick boxes which allegedly caused a fall on the store floor. In *Babin*, the store produced the affidavit of its employee

who stated she had inspected the aisle ten minutes prior to the customer's fall and did not observe any toothpick boxes on the floor. The customer was unable to produce any factual support for his contention that toothpick boxes were on the floor for some period of time before his fall.

In this case, the same principle applies. The trial court in its reasons found that Sam acknowledged that the "exact cause" of the damage to her vehicle is yet unknown. Sam argues there are two potential causes for the steel protrusions; (1) a malfunction in the wedge system within the Morbihan Bridge or (2) metal grating fatigue and broken welds on the decking of the bridge. The trial court found that Sam "merely speculates and suggests as to the cause of the condition." We agree with the trial court that the "speculation falls short of the factual support" necessary for Sam to sustain her evidentiary burden of proof against DOTD. No matter what the possible cause of the problem on the Morbihan Bridge, it has no bearing on the "actual or constructive notice" of DOTD. Sam offered no factual support or documentation to contradict the overwhelming documentation presented by DOTD that it did not know about a problem with the grating on the Morbihan Bridge until January 22, 2009, the morning of Sam's incident. In fact, as shown by the DOTD affidavit, Sam's call at 7:30 a.m. **was** its first notice.

Based on our de novo review of the record, we conclude DOTD did not receive the required actual or constructive notice, much less any time to take corrective measures to repair the Morbihan Bridge prior to Sam's incident on January 22, 2009. Thus, Sam will be unable to sustain her evidentiary burden at trial, and the trial court's ruling granting summary judgment in favor of DOTD was entirely correct and more than adequately supported by the evidence submitted in support thereof.

**CONCLUSION**

For the forgoing reasons, we affirm the trial court's judgment granting the State of Louisiana, through the Department of Transportation and Development's motion for summary judgment, dismissing Billie Sam's Petition with prejudice. All costs of this appeal are assessed to Appellant Billie Sam.

**AFFIRMED.**